WHITMORE, *Trustee, et al., Appellants,* v. THE SUPREME LODGE KNIGHTS AND LADIES OF HONOR.

1. **Life Insurance :** INTEREST OF BENEFICIARY IN LIFE OF ASSURED. A person who secures an assurance policy upon the life of another must have a pecuniary interest in the life of the person so assured, or the policy will be a gambling or wager policy which the law will not enforce.

2. **Fraud :** INDIRECTION. One will not be permitted to obtain an advantage by indirect methods which would be denied him if done openly.

3. **Practice :** INSTRUCTION. A party will not be heard to complain of instructions given which are similar to those asked by him.

4. **Charitable Corporations:** STATUTE. Revised Statutes, 1879, sections 5976, 5977, do not apply to benevolent or charitable corporations.

5. **Life Insurance:** FALSE STATEMENTS OF ASSURED. In the absence of such statutory regulations as prevail in cases of ordinary insurance, false declarations, if made contrary to the agreement of the parties, will vitiate and avoid a policy of life insurance, although such declarations be not material to the risk.

6. **Benevolent Organizations:** RULES. Courts will enforce all reasonable laws and rules established by benevolent organizations for their guidance and the regulation of their relief funds, if in conformity with the laws of the state.

7. **Practice:** FRAUD: EVIDENCE. Evidence tending to show that the beneficiary in a policy of life assurance effected other insurance upon the life of the party in question is admissible when the issue is that the object was to defraud the insurance company.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*R. A. Bakewell* for appellant.

(1) A person has an insurable interest in his own life, and has a right to procure a policy on the same, and to have it made payable to any one whom he may appoint, although the beneficiary may not have any pecuniary interest in the continuance of the life of deceased, nor be of kin to him. It is not relationship between the insured and the beneficiary that is to be invoked to support the insurance. *Ins. Co. v. Allen*, 138 Mass. 24; *Campbell v. Ins. Co.*, 98 Mass. 389; *Lemon v. Ins. Co.*, 38 Conn. 294; *Fairchild v. N. E. M. L. Ass'n*, 51 Ver. 613; *Clark v. Allen*, 11 R. I. 439; *Marcus v. Ins. Co.*, 68 N. Y. 625; *Olmstead v. Keyes*, 85 N. Y. 993; *Franklin v. Ins. Co.*, 103 N. Y. 166; *St. John v. Ins. Co.*, 13 N. Y. 31; *Rawler v. Ins. Co.*, 27 N. Y. 282; *Ben. Ass'n v. Blue*, 120 Ill. 121; *Bursinger v. Bank*, 67 Wis. 75; *Clark v. Durand*, 12 Wis. 223; *Langdon v. Ins.*

*Co.*, 14 Fed. Rep. 272; *Mutual Life v. Armstrong*, 117 U. S. 501; *Ashley v. Ashley*, 3 Simons, 149. (2) The fact that the assignee of a life policy has no insurable interest in the life does not avoid the assignment. It may be a circumstance to be considered in determining the character of the transaction; but it is not conclusive. *Ins. Co. v. Allen*, 138 Mass. 24. (3) One has a right to have his own life insured with the money of another, and to assign the policy to him absolutely. One may insure his own life and present the policy to a friend. *Cunningham v. Smith's Adm'r*, 70 Pa. 450; *Barber v. Morris*, 2 Moody & Rob. 62; *Ins. Co. v. Robertshaw*, 2 Carey, 161; *Elliott's Appeal*, 14 Wright, 80. (4) A valid policy, once made, remains valid if the conditions are complied with. *Valton v. Assurance Co.*, 20 N. Y. 32. (5) The refusal to give an instruction, correct and applicable to the case, is error, where the instructions given do not fully cover such theory. *Coleman v. Roberts*, 1 Mo. 97. (6) Ambiguous instructions, and such as are calculated to confuse and mislead the jury, should not be given. *Otto v. Bent*, 48 Mo. 23; *Greer v. Parker*, 85 Mo. 107; *Belt v. Good*, 31 Mo. 128. (7) Misstatement of a fact will not avoid the policy, unless the fact, if correctly stated, would have increased the risk, induced the insurer to decline it, or enhanced the premium. The false statement must be wilful and material. *Marion v. Great Republic*, 35 Mo. 148; *Boggs v. Ins. Co.*, 30 Mo. 63. (8) Instructions should be applicable to the case made by the pleadings and issues. *Vanhooser v. Berghoff*, 90 Mo. 487; *Camp v. Heelan*, 43 Mo. 591; *Quinlivan v. English*, 44 Mo. 46; *O'Fallon v. Bienvenue*, 3 Mo. 405. (9) Judgment will be reversed for the admission of incompetent testimony, where it is probable that an instruction to disregard it failed to remove the impression made. *Cobb v. Griffith*, 12 Mo. App. 130; *Weil v. Poston*, 77 Mo. 284; *Howe Machine Co. v. Rosine*, 87 Ill. 105; *State v. Daubert*,

42 Mo. 242. (10) Undue influence, to avoid a contract, must have been actually exerted, and in such a way as to substitute the intention of the contracting party for that of the person charged with procuring the contract by fraud. *Jackson v. Hardin*, 83 Mo. 175; *Ketchum v. Stearns*, 76 Mo. 396; *Sunderland v. Hood*, 84 Mo. 293.

*S. Hermann* and *Valle Reyburn* for respondent.

(1) This court will indulge every presumption in favor of the judgment of the court below; and the party who complains of an erroneous ruling, whether in the admission of testimony, or in the giving of instructions, must point out clearly and distinctly the specific error complained of, the objections made thereto, the adverse ruling and his exceptions thereto. The burden is on the complaining party to prove the error without strained or doubtful inference. *Peck v. Chouteau*, 91 Mo. 139; *McMillan v. State*, 13 Mo. 33; *Douglass v. Stevens*, 18 Mo. 368; *Houston v. Lane*, 39 Mo. 498; *State v. Tucker*, 84 Mo. 26; *State v. Brown*, 75 Mo. 317. (2) Unless the error complained of is brought to the attention of the trial court, in the motion for new trial, the appellate court will disregard the complaint. *State v. Preston*, 77 Mo. 295; *Matlock v. Williams*, 59 Mo. 105; *State v. Degonia*, 69 Mo. 490. (3) Courts will enforce all reasonable laws and rules established by benevolent societies for their guidance, and for the method of participation in their relief funds, unless such rules are violative of the laws of the state. *Holland v. Taylor*, 16 Ins. Law Jour. (Ind.) 609; *Coleman v. Sup. Lodge*, 18 Mo. App. 189; *Osceola Tribe v. Schmidt*, 47 Md. 98; *Aid Soc. v. Leopold*, 101 Pa. 111; *Borgraefe v. Sup. Lodge*, 22 Mo. App. 127; *Benevolent Soc. v. Baldwin*, 86 Ill. 479; *Yoe v. Howard Ass'n*, 63 Md. 90; *Dolan v. Good Samaritan*, 128 Mass. 439; *Karcher v. Sup. Lodge*, 137 Mass. 368. (4) Evidence tending to show that the beneficiary in a policy effected insurance

upon the life of the assured in other companies, at or about the same time, is admissible in support of a defense, that, in obtaining the insurance in question, the object of the beneficiary was to defraud the insurance company. *Ins. Co. v. Armstrong,* 117 U. S. 591; *Castle v. Bullard,* 23 How. (U. S.) 173; *Lincoln v. Clafflin,* 7 Wall. 132; *Bottomly v. United ·States,* 1 Story, 135. (5) Where a policy, or the application for a policy, contains the provision, that, if the proposal, answers and declarations should be, in any respect, false, fraudulent or untrue, the policy shall be void, such statement must, by agreement of parties, be absolutely true; and, if untrue, in any respect, whether material to the risk or not, the policy is void. *Ins. Co. v. France,* 91 U. S. 510; *Jeffries v. Ins. Co.,* 22 Wall. 47; *Brockway v. Mut. Benefit Co.,* 9 Fed. Rep. 249; *Goucher v. Ins. Co.,* 20 Fed. Rep. 596; *Carrigan v. Ben. Ass'n,* 26 Fed. Rep. 230; *Davy v. Ins. Co.,* 20 Fed. Rep. 482; *Lintz v. Ins. Co.,* 8 Mo. App. 372. (6) Where, through relationship, or some other cause, a beneficiary has an insurable interest in the life of the party insured, payment of premiums by such a party is perfectly lawful; but, where no such insurable interest exists, payments by the beneficiary create suspicion that the policy is a cover for a wagering contract, and courts properly direct the attention of juries to this element in the transaction. *Fairchild v. Life Ass'n,* 51 Vt. 624; *Cunningham v. Smith,* 70 Pa. 458; *Ins. Co. v. Schaeffer,* 4 Otto, 457; *Ins. Co. v. France,* 4 Otto, 561. (7) A party cannot complain of error in instructions given by the court if the instructions offered by him contain the same error. *McGonigle v. Daugherty,* 71 Mo. 259; *Smith v. Culligan,* 74 Mo. 387; *Bank v. Hammerslough,* 72 Mo. 274; *Harris v. Hays,* 53 Mo. 90.

SHERWOOD, J.—The pleadings in this cause are, in substance, as follows :—

Plaintiffs, Benjamin T. and Marie E. Whitmore, are husband and wife and defendant is a corporation. On the twenty-second of November, 1883, Mary A. Mudd was a member of Nonpareil Lodge, number 592, of defendant in St. Louis, and entitled to participate in the relief fund of said order to the amount of one thousand dollars, said sum to be paid to plaintiff, Marie E. Whitmore, as trustee of Mary L. Whitmore. Defendant issued its benefit certificate under seal to said Mary A. Mudd, for one thousand dollars, payable on death of said Mudd to said Marie E. Whitmore, as trustee as aforesaid. Mary A. Mudd complied with all the conditions of said certificate, paid all assessments, etc., and died on the twenty-first of July, 1884, a member of said order, in good standing. The certificate is filed as Exhibit A. Plaintiff asks judgment for one thousand dollars. The petition has a second count upon another certificate for two thousand dollars, filed as Exhibit B.

The answer, after a general denial, alleges that the deceased, Mary A. Mudd, procured the insurance in question by false and fraudulent representations as to her health; and by false answers to the questions put to her by defendant as to the relationship of the beneficiary to her, as to the cause of death and age of her relatives. These answers are set forth in full, and alleged to have been as to material matters. The answer further sets up that Mary A. Mudd was of weak mind, and was induced by fraudulent representations and influence of plaintiffs, Benjamin T. and Marie E. Whitmore to become a member of defendant; that Benjamin T. Whitmore, being a physician, caused himself to be made a medical examiner of defendant, and, as such, witnessed and subscribed the application of said Mary A. Mudd, and fraudulently recommended her to defendant as a good subject for insurance; and made false statements to defendant as to her health; and that he and his wife, by fraudulent acts and representations,

induced the lodge of defendants to receive said Mary A. Mudd to membership, and procured further insurance on her life to the amount of nineteen thousand dollars, within eight months from the date of the certificate in suit. That Mary L. Whitmore, the *cestui que trust*, is the infant daughter of plaintiffs, and that the insurance in question and the other insurance was obtained by a fraudulent conspiracy of plaintiffs. That Mary A. Mudd lived with plaintiffs, and that her death was caused by their ill-treatment and neglect of her, and that her initiation fee and assessments were advanced for her by plaintiffs. The answer also denies that Mary A. Mudd was of kin to either of plaintiffs or to their daughter, the beneficiary in question under the certificates in suit.

The replication specifically denies the new matter set forth in the answer.

It is admitted by the pleadings that the defendant was an incorporated, co-operative, benevolent insurance society.

The evidence is not preserved at length in the bill of exceptions, but only in short form, and, omitting the cross-examination of Williamson (afterwards ruled out and instructed against by the court), is the following :—

Plaintiffs introduced evidence tending to prove all the material allegations of the amended petition, and also introduced the constitution and by-laws of defendant.

Defendant introduced testimony tending to show that the statements made by Mary A. Mudd in her written application to defendant for insurance, as to her health, the relationship of the *cestui que trust* of plaintiffs to her, and the age and cause of death of her relatives, were, in some respects, untrue; also that said Mary A. Mudd was of weak mind, and under the influence of plaintiff, Benjamin T. Whitmore; that said

Whitmore was a member of the lodge of defendant to which said Mary A. Mudd belonged, and was a medical examiner of the same, and, as such, at the time of such insurance, and in order to effect the same, signed a physician's certificate as to the health of said Mary A. Mudd, which was, in some material respects, false.

Defendant introduced evidence tending to show that the life of Mary A. Mudd was also insured in four other benefit societies for the benefit of the children of said plaintiffs, Benjamin T. and Mary L. Whitmore, to the amount of nineteen thousand dollars, all of which testimony as to other and further insurance was then and there objected to by plaintiffs as incompetent and irrelevant, and the objection overruled; to which rulings the plaintiffs then and there excepted.

Defendants introduced evidence tending to show that the health of said Mary A. Mudd was weak; that she was no relation to plaintiffs—or to either of them, or to their children; that plaintiffs allowed said Mary A. Mudd to sleep and live in a cellar room in their house after she was insured, and that she lived with them in a menial capacity, and that she had no money except what plaintiffs gave her; and that plaintiff Benjamin furnished her with the money with which the insurance in question was effected, and the monthly assessments with which it was kept up; and the defendant also offered evidence tending to prove the several facts stated in the instructions afterwards given by the court in this cause.

Plaintiffs introduced evidence tending to show that Mary A. Mudd, deceased, was of good health and fair intellectual abilities and of good education; that she was not under any undue influence of plaintiffs, or either of them; that she was a first cousin of plaintiff, Benjamin T. Whitmore; that the children of plaintiffs, who are beneficiaries of the policy, were two girls of tender age; that deceased was devotedly attached to them; that she

was treated always by plaintiffs as an honored member of their family, and not as a menial; that she loved them and they her; that the most friendly relations existed between deceased and plaintiffs; that her room in their house was cheerful, wholesome and comfortable, and not a cellar room; that the deceased had money of her own, and that the money with which she kept up and paid the insurance in question was her own; and that no statements were made at any time to the defendant, by the deceased, or by plaintiff, Benjamin T. Whitmore, which they, or either of them, believed to be false, or that were false, in regard to said application for insurance; that the said Mary A. Mudd, at or about the time of the insurance in question, was examined for other insurance by two other physicians, and was passed by them and recommended by them for membership into two of the other orders to which she belonged.

The court refused all instructions asked by either party, but gave, of its own motion, the following:—

"1. The court instructs the jury that the relationship existing in this case, between the beneficiary, Mary L. Whitmore, and the insured, Mary A. Mudd, was such that, while Mary A. Mudd, under the charter of defendant, might lawfully effect such insurance on her own life for the benefit of said beneficiary, as the certificates read in evidence express, it would not have been lawful for the beneficiary, Mary L. Whitmore, or for either of plaintiffs, for their said child, to effect such an insurance on the life of Mary A. Mudd. Hence, if you find from the evidence that Benjamin T. Whitmore procured, or caused, Mary A. Mudd to insure her life as expressed in the certificates read in evidence (as Exhibits A and B), and that he paid for said insurance out of his own funds, then said certificates are void, and your verdict should then be for defendant; but if, on the other hand, you believe from the evidence that said certificates were issued to said Mary A.

Mudd upon her application, and the payments, made to obtain the same and keep the same in force, were made by her, Mary A. Mudd, or by any person on her behalf, with her money, and that during July, 1884, said Mary A. Mudd died a natural death, you should then return a verdict for plaintiffs, unless you should believe from the evidence that said insurance was fraudulently procured.

"2.   The insurance recited in the certificates read in evidence would be 'fraudulently procured,' as mentioned in instruction number 1, if obtained by any such misrepresentation as is defined in the next instruction number 3.

"3.   The court instructs the jury that, if they believe from the evidence that Mary A. Mudd, at the time of becoming a member of defendant, made to it any misrepresentation (in the papers read in evidence as Exhibits C or D), with regard to her age, physical condition or family history; and that the fact so misrepresented actually contributed to her death, then plaintiffs cannot recover in this case, and the jury should find for defendant.   By 'misrepresentation,' in this connection, is meant any statement of fact not then known by her to be true.

"4.   The court instructs the jury that, for the purposes of this case, the word 'cousin' as used in the benefit certificates in evidence, may be interpreted to mean a degree of relationship more distant than that of first cousin.

"5.   The jury are instructed to disregard any statement made by any witness concerning the alleged death of James Milburn, or concerning any alleged insurance upon his life; and to give no effect to any such statement in their consideration of this case.

"6.   The petition of plaintiffs in this case presents two counts or demands for decision.   Your verdict should contain a separate and distinct finding as to each

of said counts. If you find for plaintiffs you should assess their damages at the sum of $1,021.66 on the first cause of action, and at the sum of $2,043.32 on the second cause of action stated in the petition. If you find for defendant as to either, or both, of said counts, your verdict then should simply recite that you find in favor of defendant as to such count or counts as to which you so find."

The jury found the issues in favor of the defendant, and the plaintiffs appealed.

It is the settled law of this court that in order to the validity of a life assurance policy the person who secures such policy must have a pecuniary interest in the life of the person assured, or else the policy will be a gambling or wager policy, which the law will not enforce. Thus in *Singleton v. Ins. Co.*, 66 Mo. 63, it was ruled that an uncle had no insurable interest in the life of his nephew, and therefore such a policy, based merely upon such relationship, was void. In that case the authorities both in this state and elsewhere are well reviewed and the principles already announced declared. This, it seems, was the rule at common law; and the statute of 14 Geo. III, avoiding wagering policies, was but declaratory of the common law. *Ruse v. Ins. Co.*, 23 N. Y. 516.

In addition to the authorities cited in Singleton's case, *supra*, will be found: *Warnock v. Davis*, 104 U. S. 775; *Franklin Ins. Co. v. Hazzard*, 41 Ind. 116; *Mutual Benefit Ass'n v. Hoyt*, 9 N. W. Rep. 497; *Brockway v. Mutual Benefit Life Ins. Co.*, 9 Fed. Rep. 249; *Elkhart Mut. Aid v. Houghton*, 13 Ins. L. J. 895; 17 Western Jurist, 297. The principle announced in these authorities is expressed in the instruction given by the court of its own motion. And the declaration in that instruction contained, that, what Benjamin T. Whitmore could not do directly, in the way of effecting an assurance on a life in which he had no insurable

interest, he could not do indirectly, is obviously correct. A party will not be permitted to obtain an advantage by indirect methods, which would be denied him if done openly. *Brockway v. Ins. Co.*, 9 Fed. Rep. 249; *Swick v. Ins. Co.*, 2 Dillon, 160; Hine & Nichols' Life Ins., 75.

Nor is anything objectionable seen in instructions 2 and 3, which the court gave. Indeed, those instructions were in substance asked by plaintiffs in instructions 21 and 22, which were refused. Where a party has asked similar instructions to those given, he is in no position to complain. *Harris v. Hays*, 53 Mo. 90; *McGonigle v. Dougherty*, 71 Mo. 259; *Bank v. Hammerslough*, 72 Mo. 274; *Smith v. Culligan*, 74 Mo. 387; 91 Mo. 628; *Bettes v. McGoon*, 85 Mo. 580; *Noble v. Blount*, 77 Mo. 235; *Holmes v. Braidwood*, 82 Mo. 610; *Reilly v. Railroad*, 94 Mo. 600.

And it may be said that the third instruction given by the court was even more favorable for plaintiffs than the law warranted; because sections 5976, 5977, 2 Revised Statutes, 1879, do not apply to benevolent or charitable incorporations. See Laws, 1881, p. 87.

In the absence of such statutory regulations then, as prevail in cases of ordinary insurances, declarations in any respects, if false, if made contrary to the agreement of the parties will vitiate and avoid the policy, though such declarations be not material to the risk. *Ætna Life Ins. Co. v. France*, 91 U. S. 510; *Jeffries v. Life Ins. Co.*, 22 Wall. 47; *Brockway v. Mutual Benefit Co.*, 9 Fed. Rep. 249. And courts will enforce all reasonable laws and rules established by those benevolent organizations for their guidance and the regulation of their relief funds if in conformity with the laws of the state. *Holland v. Taylor*, 16 Ins. L. J. 609; *Osceola Tribe v. Schmidt*, 47 Md. 98; *Benevolent Soc. v. Baldwin*, 86 Ill. 479; *Borgraefe v. Lodge*, 22 Mo. App. 127.

The constitution and by-laws of the defendant were not preserved in the record, and therefore it is impossible to pass properly upon any matters connected with such constitution and by-laws.

There was no error in admitting evidence tending to show that the beneficiary effected other insurances upon the life of the party in question, when the issue was as here that the object was to defraud the insurance company. The supreme court of the United States in passing upon this point says:—"The theory of the defense is that the purpose of Hunter in obtaining the insurance was to cheat and defraud the company. In support of that position, evidence that he effected insurance upon the life of Armstrong in other companies at or about the same time, for a like fraudulent purpose, was admissible. A repetition of acts of the same character naturally indicates the same purpose in all of them; and, if, when considered together, they cannot be reasonably explained without ascribing a particular motive to the perpetrator, such motive will be considered as prompting each act." *N. Y. Mut. Life Ins. Co. v. Armstrong*, 117 U. S. 598.

In regard to the evidence elicited on the cross-examination of Williamson, it was admitted without objection by plaintiffs' counsel, and afterwards the court gave an instruction as already seen, which excluded such evidence from the consideration of the jury. This cured the error if any could be said to have been committed in the circumstances mentioned. Moreover, there was no objection taken in the motion for a new trial to the instructions given by the court of its own motion.

Considering all of these things and looking at the record as a whole, we are not prepared to say that any reversible error was committed at the trial, and so we affirm the judgment. All concur, but BARCLAY, J., not sitting.