JOHN HEUSNER, Appellant, v. THE MUTUAL LIFE
INSURANCE COMPANY ; CHARLES SCUDDER,
Public Administrator, Respondent.

**St. Louis Court of Appeals, December 22, 1891.**

1. Interpleader: WAIVER OF OBJECTION. After a decree has been obtained on an answer in the nature of a bill of interpleader, and pursuant thereto the fund in controversy is paid into court and interpleas therefor are filed by the contesting claimants, and the conflicting rights of these claimants are determined under these interpleas, it is too late for any of the interpleaders then, for the first time to raise the objection or claim that the case was not a proper one for a bill of interpleader.

2. ———: CONFLICTING CLAIMS TO INSURANCE MONEY. If a life insurance policy is assigned, and thereon, on the death of the insured, conflicting claims are made against the insurance company by one claiming under the assignment and the administrator

of the insured, the former claiming the whole fund as his own absolutely, and the latter contending that the assignment is in force only as security for a debt much less in amount than the sum due under the policy, the insurance company is entitled to file a bill of interpleader ; and its right to have the claimants interplead may be enforced by its answer to the suit of one of them, the other claimant being made a party to the action for that purpose.

3.  **Life Insurance: VALIDITY OF ASSIGNMENT.** The purchase of a life-insurance policy for mere speculative purposes by one who has no insurable interest in the life of the assured is against public policy and invalid, though, possibly, the purchaser may be entitled to reimbursement for his advances in making the purchase. ( *McFarland v. Creath*, 35 Mo. App. 112, *distinguished.*)

4.  ———: ———.  This rule obtains where such purchase is made from a person other than the assured, who is ostensibly the owner of the policy, and has some insurable interest in the life of the assured ; nor will the fact, that the assured was, without the knowledge of either the purchaser or the vendor, dead at the time, give validity to the transaction.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Cecil V. Scott*, for appellant.

(1)  A policy of life insurance issued to a person on his own life for his benefit, or to a *bona fide* beneficiary and valid in his hands, will not lose its validity or obligatory force by reason of its being assigned to one who has no insurable interest in the life of the assured. *McFarland v. Creath*, 35 Mo. App. 112; *Ins. Co. v. Armstrong*, 117 U. S. 597; *Baker v. Young*, 47 Mo. 453; *Ins. Co. v. Brant*, 47 Mo. 424; *Whitmore v. Knights of Honor*, 100 Mo. 36–46.  (2)  If the company waives the want of insurable interest in an assignee, an assignor or prior assignee cannot claim any advantage from the want of such interest.  May on Ins. [ 3 Ed. ] sec. 398a.  (3)  An instrument of conveyance or assignment absolute on its face cannot

be shown to be a mortgage by parol evidence as to innocent third parties. *State ex rel. v. Koch*, 40 Mo. App. 635–640; *Link v. Harrington*, 41 Mo. App. 635–641. The court improperly admitted evidence tending to show that the assignments from Graham to Sessinghaus and from Sessinghaus to Hauschild, though absolute on their face, were in fact in the nature of mortgages. (4) No warrant either under the common law or the statute exists authorizing the interplea herein, and, if it be that similar practice has been more or less frequently indulged by the circuit courts, it nevertheless remains that such practice is wholly unauthorized, is subversive of the rights of plaintiffs, and ought not to be permitted. *Hathaway v. Foy*, 40 Mo. 540; *Boyer v. Hamilton*, 21 Mo. App. 521; *Kortjohn v. Simmers*, 29 Mo. App. 271; *McFarland v. Creath*, 35 Mo. App. 112. (5) Where a true owner of a non-negotiable instrument clothes another with the usual evidences of ownership, or with full power of disposition, and third persons are thereby led into dealing with such apparent owner and receive a transfer thereof, they will be protected in their dealings. Their rights in such cases do not depend upon the actual title, interest or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing as against them the existence of the title or power which he caused or allowed to be vested in the apparent owner. *Bank v. Bank*, 71 Mo. 183, 191, 199, and cases cited; *Lee v. Turner*, 89 Mo. 489, 494; *Neuhoff v. O'Reilley*, 93 Mo. 164, 169; *Turner v. Hoyle*, 95 Mo. 337, 346. (6) The public administrator in charge of the estate of James Herron Graham stands in Graham's shoes, and has no greater rights than Graham would have if living and a party hereto.

*Huff & Hereford*, for respondent.

(1) The interplea was properly allowed. R. S. 1889, sec. 2099; Pomeroy on Remedies & Rem. Rights

(1876), sec. 418; *Carter v. Mills*, 30 Mo. 432 ; *Keener v. Grand Lodge*, 38 Mo. App. 543. (2) The plaintiff's objection to allowing the interplea was not made in time. (3) A wagering policy is void in Missouri. *Singleton v. Ins. Co.*, 66 Mo. 63. *Whitmore v. Supreme Lodge*, 100 Mo. 36. (4) A policy of life insurance is assignable, but is not negotiable. *Trustees v. Young*, 47 Mo. 453 ; *McFarland v. Creath*, 35 Mo. App. 112. (5) An assignment of a life policy to one to whom it has been transferred as collateral security conveys to such assignee only sufficient of its proceeds to pay the debt due with interest. *Gilbert v. Moss*, 104 Pa. St. 74 ; *Pritchet v. Ins. Co.*, 3 Yeates, 458 ; *Edgell v. McLaughlin*, 6 Wharton, 176 ; *Adams v. Ins. Co.*, 1 Rawle, 97 ; *Ruse v. Ins. Co.*, 23 N. Y. 516 ; *Cammack v. Lewis*, 15 Wallace, 643 ; *Warnock v. Davis*, 14 Otto, 775 ; *Ins. Co. v. Hazzard*, 41 Ind. 116 ; *Stevens v. Warren*, 101 Mass. 564 ; *Ins. Co. v. Lucks*, 108 U. S. 498 ; *Lewis v. Ins. Co.*, 39 Conn. 100 ; May on Ins., sec. 398 ; *Cawthorn v. Perry*, 13 S. W. Rep. (Texas) 268 ; *Price v. Knights of Honor*, 68 Texas, 361 ; *Lewy v. Gillard*, 13 S. W. Rep. (Texas) 304 ; *Roller v. Moore's Ex'r*, 19 Ins. L. J. (Va.) 39 ; *Downey v. Hoffer*, 20 Ins. Law Rev. (Pa.) 84.

THOMPSON, J.—On February 15, 1873, the defendant insurance company issued a policy of life insurance on the life of James Herron Graham in favor of James Hutchinson Graham. It was a ten-year life policy. James Herron Graham was a son of James Hutchinson Graham, and on August 19, 1876, the latter assigned the policy absolutely to the former. On the sixteenth of June, 1885, James Herron Graham made an assignment, absolute in form, of the policy to William Sessinghaus, who had previously made some advances of money to the family of Herron, and who also was obliged to pay about $150 to a brother of Herron, who seems to have held the policy at the time as security for

that amount.   The transaction between Herron Graham and Mr. Sessinghaus, as shown by the evidence, was no more than a transfer of the policy as collateral security for the advances previously and then made.   These amounted to about $280 or $290.

Mr. Sessinghaus held the policy until July 12, 1886, at which time James Herron Graham brought to him Mr. August Hauschild, as a person who was willing to take the policy and lend him, Graham, enough to pay the amount due Sessinghaus and something more.   The latter had been pressing Graham for the money.   On the date last mentioned James Herron Graham executed his note for $280 in favor of Mr. Hauschild, payable in one year with eight-per-cent. interest, and, at Graham's request, Sessinghaus made an assignment of the policy, also absolute in form, to Mr. Hauschild.   The latter held the note and policy from that time down to February 19, 1889, at which time he transferred the policy by an absolute assignment to the plaintiff, John Heusner.

The evidence is conflicting as to whether or not, at the time of this transaction, Heusner was informed by Hauschild that he held the policy as collateral, and also as to whether or not he transferred by delivery, along with the policy and the previous assignments, the note of $280.   Nothing had been paid on the note up to that time, and he still held it.   The amount then due by calculation was $338.17, and he testifies that he received from Heusner only the amount then actually due him.

The plaintiff paid Hauschild $342.   At the time of the transfer from Hauschild to Heusner, James Herron Graham was dead, but none of the parties to the transaction had any knowledge of the fact.   The public administrator, Mr. Scudder, took charge of his estate, and demanded of the insurance company payment of the amount due under the policy.   The plaintiff as assignee also brought suit on the policy.   The insurance

company filed an answer in the nature of a bill of inter-
pleader, and on leave paid the amount due under the
policy, viz., $1,548, into court. An order was made
requiring the claimants to interplead for the fund,
which they did, and on the trial the facts above stated
appeared in evidence.

The case was heard before the Hon. JACOB KLEIN, sit-
ting as a judge in equity. Upon this evidence the court
gave judgment for the plaintiff, not for the whole fund,
but for the sum of $386.40, and directed the clerk to pay
this amount to him, less one-fourth of the unpaid costs.
The court also gave judgment in favor of the inter-
pleader Scudder for the balance of the fund, and
directed the clerk to pay over such balance to him, less
three-fourths of the unpaid costs. From this judgment
the plaintiff appeals.

I. The first assignment of error is that this was not
a proper case for an interpleader. This objection was
raised for the first time by the plaintiff in his motion
for a new trial. As it was not an objection going to the
jurisdiction, it came too late; nor was it well taken, if
it had been taken in time. Upon this question we
cannot do better than adopt the memorandum filed by
the learned judge of the circuit court as a substantial
expression of our own views.

"In this case the defendant was permitted to pay
the amount of a life policy into court, and obtained an
order requiring certain parties, making claim to it
adversely to the plaintiff, to interplead with the plain-
tiff therefor. No objection was made by the plaintiff to
this order, and no exception taken to the same at any
stage of the proceedings before the trial. On the
contrary the plaintiff joined issue on the interplea, first
by demurrer and then by answer. At the trial the
plaintiff objected to the admission of any evidence in
support of the interplea, because the assignments under
which the plaintiff claims were absolute in form, and it

was not competent to show that the policy, neverthe-
less, was held only in pledge. The objection was over-
ruled, and, on a full consideration of the law and the
facts, the court rendered judgment disposing of the
fund in court in accordance with the views then
expressed. The plaintiff now challenges, in his motion
for a new trial, the correctness of the judgment, and
contends that no judgment could be properly rendered
in favor of the interpleader, because the answer of the
defendant company did not disclose a proper case for
an interpleader. The difficulty with this contention is
twofold : *First*, it comes too late ; *second*, it is not
well founded. It will not do for a party to submit the
merits of a controversy between himself and another
party to the court, for determination upon appropriate
pleadings filed, and then, after the matter has been
determined, to claim that there was no controversy,
and that the court ought not to have determined it.
Here the fund was in court. The plaintiff never objected
to its being paid into court; on the contrary, he tacitly
consented to its being paid in. He never denied the
averments of the answer of the company, nor challenged
their sufficiency in any manner. The court made an
order permitting the adverse claimant to the fund to
interplead for it and to assert his claim thereto. This
seems to have been proper enough under the circum-
stances. The fund being in court, it became its duty to
ascertain the parties entitled thereto, and to bring in all
parties who might lay any claim to it, for the purpose
of disposing of the fund. Such a course was suggested
by the court of appeals in *Keener v. Grand Lodge*,
38 Mo. App. 543.''

We will merely add that the course which was
taken, in allowing the defendant to pay the fund into
court and be exonerated, and in requiring the claimants
for it to interplead, was in accordance with the settled
practice in this state for years, and we have no doubt
whatever of its entire propriety.

II.  The main question was likewise well disposed of by the learned judge of the circuit court, in a memorandum of opinion filed by him, which we subjoin as expressing our views :

"It is the settled law of this state that a policy of insurance, procured by one upon the life of another for the benefit of the former, will be regarded as void, as against public policy, unless the beneficiary has an interest, either pecuniary or natural, depending on family relation, in the life insured.  *Singleton v. Ins. Co.*, 66 Mo. 63 ; *Whitmore v. Sup. Lodge Knights and Ladies of Honor*, 100 Mo. 36.  Although a policy of life insurance is assignable like any other chose in action (*Baker, Trustee, v. Young*, 47 Mo. 453, 456 ; *McFarland v. Creath*, 35 Mo. App. 112, 122 ; *Life Ins. Co. v. Armstrong*, 117 U. S. 597), still it cannot be regarded as negotiable ; the assignor can confer upon the assignee no greater right or interest in the policy than he had at the time of the assignment.  In the case at bar, the evidence leaves no room for doubt that Hauschild only held the policy as collateral security for the payment of the note of $280, and he only undertook to assign all his right, title and interest in the policy.  But, aside from this consideration, it seems to be a sound and reasonable proposition that an assignment of a life policy to one who has no insurable interest in the life insured, is void as falling within the rule against wagering policies.  *Cammack v. Lewis*, 15 Wall. (U. S.) 643 ; *Warnock v. Davis*, 104 U. S. 775 ; *Stevens v. Warren*, 101 Mass. 564 ; *Lewis v. Ins. Co.*, 39 Conn. 100 ; *Franklin Life Ins. Co. v. Hazzard*, 41 Ind. 116 ; *Gilbert v. Moose*, 104 Pa. St. 74 ; *Price v. Knights of Honor*, 68 Tex. 361 ; *Cawthorn v. Perry*, 13 S. W. Rep. (Texas, 1890) 268 ; *Lewy v. Gillard*, 13 S. W. Rep. (Texas, 1890) 304 ; *Roller v. Moore's Adm'r*, 19 Ins. L. J. (Pa. 1891) 39 ; *Downey v. Hoffer*, 20 Ins. L. J. (Pa. 1890) 84.  There are decisions which militate against this view, and some reasons are urged against it in one,

May on Insurance [3 Ed.] section 398a. I do not understand that the court of Appeals in *McFarland v. Creath*, 35 Mo. App. 112, has decided this question, and the doctrine of the above cases may well stand with what is said in *McFarland v. Creath*. The plaintiff had no insurable interest in the life of James Herron Graham. If he paid the $342 for this paid-up policy in the hope or expectation that he might soon collect $1,500, the transaction can only be regarded as a wager on the life of Graham, and, therefore, void beyond the amount then actually paid for the policy. The fact that Graham was at the time dead does not affect the question; none of the parties knew that fact. Besides, if Hauschild merely held the policy as collateral, he could not by an assignment of all his right, title and interest in the policy convey the equity of redemption of Graham and his legal representatives.

We will merely add that the learned judge was right in his supposition that there is nothing in our decision in *McFarland v. Creath*, 35 Mo. App. 112, which conflicts with the principle on which he disposes of the case. What we there held was that the *assured* may, if he sees fit, and acts in good faith, keep up the policy *on his own life* for the benefit of a third person, who may have no insurable interest therein ; and such a case was carefully distinguished from the case where a third person, who has no insurable interest in the particular life, takes out the policy as a wager or speculation. But, if this case were opposed to the conclusion reached by the circuit court in the present case, the result would be the same, because then we should be compelled to regard it as overruled by the subsequent decisions of the supreme court in *Whitmore v. Supreme Lodge*, 100 Mo. 36, 46. This last case holds, with obvious propriety, that what the law forbids a party to do directly, it does not allow him to do indirectly. It was accordingly held a good defense to an action on a

mutual benefit life-insurance certificate that the plaintiff ( who sued as trustee for his minor daughter, the beneficiary named in the certificate ) had procured the assured, a person of weak mind, to take out the insurance on her own life for the benefit of his daughter, who had no insurable interest therein,—treating the case as though he had taken out the insurance for his daughter himself. By parity of reasoning, the plaintiff in this action could not, by purchasing this policy from one who held it as pledgee to secure a debt, acquire, to say the most, any greater right therein than the pledgor had to confer.

Nor is the argument pressed upon us in a supplemental brief, that a *bona fide* purchaser of a non-negotiable instrument may get a higher title than his vendor had to convey, on the principle of estoppel, available in its application to a life-insurance policy, in the face of this rule of public policy. That rule is stated by the learned counsel for the appellant thus: " Where the true owner of a non-negotiable instrument clothes another with the usual evidence of ownership, or with full power of disposition, and third persons are thereby led into dealing with such apparent owner, and receive a transfer of the same, they will be protected in their dealings ; their rights in such a case do *not* depend upon the actual title, interest or authority of the party with whom they deal *directly*, but are derived from the act of the real owner, which precludes him from disputing as against them the existence of the title or power which he caused, or allowed, to be vested in the apparent owner."

That such a rule is frequently applied by the courts, especially in the case of sales of certificates of stock, indorsed and delivered in blank, is well known. But it can have no application to the sale of a life insurance policy, because the rule of public policy above stated prevents that from becoming a vendible *chose in*

*action,* such as is a stock certificate or an ordinary non-negotiable note. Such an instrument cannot be hawked :about from hand to hand like a stock certificate, all the members of the stock exchange successively acquiring an interest in having a particular man die, when the state is interested in hàving him live. One, who is asked to purchase such an instrument as an investment or as a speculation, is met at the threshold with the rule of public policy, which forbids one man from acquiring a speculative interest in the death,—not in the life,—of one who is a stranger to him. And, if he cannot acquire such an interest in the first instance by taking out a policy of life insurance on such person, he cannot acquire it by purchasing for speculative purposes a policy which has been taken out by, or on behalf of, some one who has an insurable interest in the particular life. The most that the rule of public policy will allow him to claim, in the case of such a purchase, is a reimbursement of his advances made in purchasing the policy, assuming that he has acted in good faith ; and that the public administrator concedes, and the judgment of the circuit court gives, the plaintiff in this case.

The judgment will be affirmed. It is so ordered. All the judges concur.