# BLACK v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division Two, February 24, 1903.

1. **Recovery:** RESPONSIVE TO PLEADINGS: WAIVER BY INSTRUCTION. Plaintiff's petition alleged that he went between cars to uncouple them "under the direction of his foreman," but at the trial he testified that such was not the fact, but that he went there voluntarily, and appellant argues that plaintiff was erroneously permitted to recover on an admitted state of facts at variance with the petition. But the petition also alleges, when fairly interpreted, that plaintiff was in the performance of his duties as a switchman, and while so engaged, in the exercise of due care and caution, the engine was suddenly, negligently and violently, without notice to him, started back by the engineer, catching and crushing him. *Held*, that as the case was tried by both parties on this theory, and so submitted to the jury, as is shown by appellant's requested instructions, appellant will not be heard to say that the judgment is not responsive to the issues.

2. **Negligence:** CHOOSING DANGEROUS WAY: SWITCHMAN: INSTRUCTION: PRESUMPTION. Where an instruction asked by defendant told the jury that, if they believed from the evidence that there were two ways in which plaintiff could have performed the work, one dangerous and the other safe, and that if he voluntarily chose the dangerous way, he could not recover, it will be conclusively presumed after verdict for plaintiff that there was evidence tending to show that the course pursued by plaintiff was not more dangerous than the other, for otherwise the instruction would not have been asked. And as the jury by their verdict for plaintiff in effect so found, the court will not consider whether he chose the safe or dangerous course.

3. ————: CONTRIBUTORY: QUESTION FOR JURY: SWITCHMAN: DRAWBAR. Whether or not a switchman in attempting to uncouple cars, contributed to his own injury, by going in between them, one of which, because of a defective drawhead, was chained up to the other, and, having first worked at the coupling pin with one hand and failing to lift it, in taking both hands and turning his back towards the engineer, who without notice suddenly backed the engine and crushed him, is a question for the consideration of the jury.

Black v. Missouri Pacific Ry. Co.

4. ———: CROSS-EXAMINATION. The court should refuse to permit the defendant in a personal injury case to ask plaintiff "whether or not he ever knew a person injured in a railroad accident to get well until after his case was tried." Such inquiry is foreign to any issue in the case, and beyond the bounds of legitimate cross-examination.

5. ———: MALINGERING: EXTENT OF INJURIES. In suits for damages for personal injuries chargeable to defendant's negligence, it is for the jury to decide whether or not plaintiff was a malingerer, and to determine the extent of his injuries, and whether or not permanent.

6. ———: STARTING TRAIN WITHOUT NOTICE. After an engineer in charge of a switch engine has been signaled to stop and then signaled again to stand still, it is negligence for him to start again without warning or notice to the switchman, and if he suddenly does so and a switchman is injured as a result, the railroad company is chargeable with his negligence.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

AFFIRMED.

*M. L. Clardy* and *Wm. S. Shirk* for appellant.

(1) Plaintiff admits that he was not directed to go between the cars to pull the pin by his foreman, and all the evidence shows that he did so voluntarily. His petition alleges that he went between the cars to uncouple them "under the supervision and direction of his said foreman." He was permitted to recover upon an admitted state of facts, wholly at variance with, and contradictory to, the allegations of the petition. This was error. Neville v. Bridge Co., 158 Mo. 293; Chitty v. Railroad, 148 Mo. 64; Crawford v. Aultman, 139 Mo. 262; Haynes v. Trenton, 108 Mo. 123; Raming v. Railroad, 157 Mo. 477. (2) The theory of the petition, and the theory upon which he was permitted to recover, are radically at variance, and the principles of law applicable wholly different. If he went in between the cars by the direction of his foreman, then he assumed no risks, except such as were glaring and highly danger-

ous.   If he went in voluntarily and unnecessarily, then he assumed all risks of whatever character.   Warner v. Railroad, 62 Mo. App. 184; Malone v. Morton, 84 Mo. 436; Hogus v. Railroad, 50 Mo. App. 250; Stephens v. Railroad, 86 Mo. 221; Huhn v. Railroad, 92 Mo. 440; Mahaney v. Railroad, 108 Mo. 191; O'Mellia v. Railroad, 115 Mo. 205; Hamilton v. Railroad, 108 Mo. 364.   (3) There are two well-known methods of unchaining a bad-order car.   The first is by getting the cars far enough apart, and then going between them, to pull the pin. The second is, to go underneath the cars, slack the chain and pull the pin.   The first method is by far the more dangerous, as is illustrated by this case.   Reed adopted the latter plan, and was not hurt by the movement of the engine and cars.   Plaintiff voluntarily and without direction or request adopted the more dangerous plan and was injured.   In such case, if the employee, having choice of two different ways of doing a thing, voluntarily adopts the dangerous way and is for that reason injured, he can not recover because he has but himself to blame for his injury.   Kinney v. Corbin, 132 Pa. St. 341; Railroad v. George, 94 Ala. 199; English v. Railroad, 24 Fed. 906; Hulet v. Railroad, 67 Mo. 239; 14 Am. and Eng. Ency. of Law (1 Ed.), p. 862; Johnson v. Bruner, 61 Pa. St. 58; St. Louis, etc. Assn. v. Brennan, 20 Ill. App. 555.   (4)   Plaintiff when injured was standing with his back toward the engine, with about nineteen cars between him and the engine.   It was gross negligence on his part to do so.   By so doing, he deprived himself absolutely of the ability to see the cars moving towards him, and very largely of the ability to hear the movement of the cars which Emmert heard. Plaintiff was an old and experienced brakeman and chose his own method of doing his work.   He knew it was very dangerous to go between cars which would shove close together owing to a draw bar being out of one, and he assumed all risks of going between the cars in a way which prevented him from seeing or hearing approaching danger.   Railroad v. Estes, 37 Kan. 715; White v. Sharp, 27 Hun (N. Y.) 94; Wetzen v. Lead Co.,

5 Mo. App. 597; Railroad v. O'Shaugnessy, 122 Ind. 588; Daudie v. Railroad, 42 La. Ann. 686. (5) The verdict of $5,000 is grossly excessive, and evidences the fact that the jury were governed by prejudice or undue sympathy. That the plaintiff was a malingerer, and purposely kept his arm from getting well prior to the trial, no one who will read the evidence can doubt. Three physicians in effect so testified. Dr. Ferguson testified that when he examined plaintiff's arm and shoulder, he resisted his movements of the arm, and that if he was placed under the influence of chloroform, the movements of the injured arm would be as good as the other. And three other doctors testified that if he would go to work, or even exercise his arm, it would get practically well. Under such circumstances, will this court sustain a verdict, which will put in this man's pocket more money than he could have earned and saved in a long lifetime of labor? Chitty v. Railroad, 148 Mo. 64; Nicholds v. Glass Co., 126 Mo. 55; Gurley v. Railroad, 104 Mo. 211; Burdict v. Railroad, 123 Mo. 236.

*John Cashman* and *Sangree & Lamm* for respondent.

(1) The act of the engineer in backing his train, contrary to all usage, custom and common sense, without a signal so to do and without warning that he intended to do so, while plaintiff, who was a yard brakeman, commonly known as a switchman, was aiding in cutting out a chained-up car, was recklessly negligent. Plaintiff had the right to rely on the engineer's performing his duty and not moving without receiving a signal so to do and obeying the signals he had already received, and he had the further right to rely on the usage and custom that if, by any emergency, the engineer had to move, he would give a warning by blasts of his whistle. Cambron v. Railroad, 165 Mo. 543; Wilkins v. Railroad, 101 Mo. 105; Butler v. Railroad, 87 Iowa 206. The principle is

the same as that at the root of those cases wherein ordinances and statutes are violated. Sullivan v. Railroad, 117 Mo. 221; Eswin v. Railroad, 96 Mo. 290; Killney v. Railroad, 101 Mo. 67; Crumley v. Railroad, 111 Mo. 152; Sullivan v. Railroad, 117 Mo. 214; Bluedorn v. Railroad, 121 Mo. 258; O'Conner v. Railroad, 94 Mo. 150; Kenney v. Railroad, 105 Mo. 270. These signals and usages are part of defendant's method of transacting its business. Rutledge v. Railroad, 123 Mo. 121; Love v. American Mfg. Co., 160 Mo. 608; Cambron v. Railroad, supra. (2) The petition, fairly read and boiled down, states our cause of action to be that plaintiff was injured by the specified negligence of the engineer while plaintiff was performing his usual duties as a switchman. This cause of action, in its entirety, was sustained by the overwhelming weight of the testimony. The case was tried and submitted to the jury below on the theory last above mentioned and all sides construed the petition to state the foregoing cause of action and no other, as witness the testimony and instructions. "The defendant fought within the lines of the issue—took its chances and lost." Fisher Real Estate Co. v. Realty Co., 159 Mo. 568. (3) One need not prove all negligent acts alleged. If negligent acts are proved of the same character as alleged, but not to the same extent, there is no variance. Werner v. Railroad, 81 Mo. 368; Frederick v. Algaier, 88 Mo. 604; Ridenhour v. Cable Co., 102 Mo. 270; Knox Co. v. Groggin, 105 Mo. 183; Gannon v. Gas Light Co., 145 Mo. 511; Stern v. St. Louis, 161 Mo. 146; Anderson v. Railroad, 161 Mo. 431; R. S. 1899, secs. 655 to 660, and secs. 672 and 676. (4) Appellant, in the absence of a complaint of surprise, by affidavit below, will not be heard now to complain of a mere variance in some particulars of the proof, even if one actually existed. Fischer v. Max, 49 Mo. 404; Ely v. Porter, 58 Mo. 158; Turner v. Railroad, 51 Mo. 501; Clement v. Maloney, 55 Mo. 352; Meyer v. Chambers, 68 Mo. 626; Olmstead v. Smith, 87 Mo. 602; Leslie v. Railroad, 88 Mo. 50; Bank v. Wills, 79 Mo. 275; Wise v. Railroad, 85 Mo. 178; Ridenhour v.

Railroad, 102 Mo. 283; Mellor v. Railroad, 105 Mo. 466; Bank v. Leyser, 116 Mo. 51; Fisher Real Estate Co. v. Realty Co., 159 Mo. 562.    (5)    Whether there were two well-known ways of pulling a pin in a chained-up car, a safe way (under the car), and a dangerous way (between the cars), and whether plaintiff, on his own initiative, unnecessarily adopted the dangerous way and thereby was hurt, were all questions for the jury on this record, were put to the jury in the form requested by appellant and answered against appellant.    Barry v. Railroad, 98 Mo. 62; Murphy v. Railroad, 115 Mo. 111; Cambron v. Railroad, supra; Bluedorn v. Railroad, 108 Mo. 448; Godfellow v. Railroad, 106 Mass. 461.

BURGESS, J.—This is an action for damages for personal injuries by an employee of the defendant company against it, alleged to have been occasioned by reason of the defectiveness of the coupling of one of its freight cars, and the negligent moving of the car by the servants and employees of defendant.

There was a trial in the court below before a jury, and a verdict for plaintiff in the sum of five thousand dollars.

The defendant in due time filed motions for new trial and in arrest, which, being overruled, it appeals.

The petition after alleging that in the train of cars by which plaintiff was injured there was a defective car whose drawhead had been pulled out and the dead-wood appurtenance thereto so damaged as to let the drawhead of the car to which it was directly attached pass under it and the two cars come together, and that the damaged car was fastened to the car next to it with a temporary chain coupling (omitting a description of plaintiff's injuries and other allegations not necessary to set forth), proceeds as follows:

That he "was under the immediate supervision of one of defendant's switch foremen or bosses of a switch crew, and was engaged in the line of his duty in aiding in cutting up and making up trains, switching cars, cutting out cars, etc., in said yards;  .  .  .    that it be-

came then and there his duty, in the line of his said employment, to help cut out said defective car from said train, and, under the direction of his said foreman, he was then and there engaged in aiding so to do. That one of defendant's switch engines was attached to said train at the time for the purpose of moving the cars thereof when and where necessary. . . . That while and when said train had come to a standstill, the defective car was pushed back by hand by said switch crew under the supervision of said foreman, so as to admit a switchman to get between it and the next car to uncouple the same as aforesaid, and this plaintiff in the line of his duty and under the supervision and direction of his said foreman, went between the cars to so uncouple them, as was usual and proper for him to do, and while engaged in so doing and while exercising due care and caution himself, the engine, attached to said train, was suddenly, violently, negligently and recklessly, without warning of any sort and without any knowledge on the part of plaintiff, started back by defendant, acting through its agents and employees, and by such start it drove and smashed said cars quickly together, thereby catching plaintiff, without any fault on his part, and smashing him between said cars and injuring him as hereinafter set forth. That it was the duty of defendant to use care and caution in manipulating said train and not to start or back the same without warning and signals, and plaintiff avers that defendant owed such duty and such care to plaintiff, so exposed as he was to peril and harm at the time, and that defendant negligently and recklessly omitted to perform such duty and negligently and recklessly omitted to use care and caution in starting said train, and negligently and recklessly started said train backward without warning, as aforesaid, and plaintiff avers that all his consequent injuries, wounds, hurts, pains, losses and damages, hereinafter referred to, were directly caused by the negligence of defendant in the premises. . . ."

The defenses were a general denial and a plea of contributory negligence.

At the time of the accident, July 25, 1898, the plaintiff was a switchman in defendant's yards at Sedalia, Missouri, whose duties were to assist in making up trains, taking out and placing cars in trains and manipulating switches, and on that day about the middle of the afternoon, a freight train, called No. 126, ran into the yard from the west. One of the cars of this train had a drawbar pulled out. The switch engine used by the switch crew of which plaintiff was a member, hooked on to this train and pulled it to the east end of the yards, where trains for the east are usually made up.

The main line of the M. K. & T. railroad crosses the main line and the other tracks of the Missouri Pacific in the east end of the Missouri Pacific yards. About the time train No. 126 was pulled into the east end of the yards by the yard engine, an M. K. & T. train pulled up south of the Missouri Pacific tracks for the purpose of crossing and going on north. The Missouri Pacific switch crew had pulled No. 126 east of this crossing, and the switchman in charge of the M. K. & T. crossing switch adjusted the switches to let the M. K. & T. train cross.

The switch crew pulled the Missouri Pacific train No. 126 east of this crossing, and the plaintiff, and other members of the switch crew, gave the engineer of the switch engine the ordinary signal to stop, and the plaintiff says he then repeated the signal, as a direction to the engineer, to stand still. The switch crew intended to uncouple the chain which fastened the car without a drawbar, to the one next to it, so as to cut that car out for repairs, whilst the M. K. & T. train was crossing the tracks.

After the switch crew had stopped Missouri Pacific train No. 126, east of the M. K. & T. crossing, as above stated, the switch crew foreman, the plaintiff and another switchman by the name of Emmert, all went to the car which was chained up, to unfasten it from the car to which it was chained.

When a drawbar pulls out, a chain is used to con-
nect the car with the next car to it.   The last link of
this chain is put into the drawbar of the next car and a
pin run through it, and the chain is then carried through
the carry-irons of the drawbar of the damaged car and
wrapped around the kingbolt or center pin of that car
and the hook at the end of the chain is run through one
of the links of the chain.   This chain with the link at
one end and the hook at the other, takes the place of the
ordinary drawbar, link and pin.

When the plaintiff, the switch foreman, Reed, and
Emmert got to the car they found that the drawbar of
the car next to the damaged car had pushed under the
bed of the damaged car so that it could not be pulled,
without slacking the engine ahead or shoving the cars
apart.   Plaintiff says that Foreman Reed said to him:
"We can't slack on ahead.   We will just shove this car
back by hand."   Thereupon all three jointly shoved
the car west, or in other words shoved the cars apart.

Reed then got down under the car, to hold up the
chain, so as to give slack on the link of the chain which
was fastened by a pin in the drawbar of the car ahead
of it, so that plaintiff could pull the pin and the chain
be thus unfastened.

Reed says he did not give plaintiff any orders or
directions to go in between the cars to pull the pin—that
he went down under the cars to lift the chain and pull
the pin himself, as he afterwards did do, without the
aid of any one.

Plaintiff admits that Reed did not direct him to go
in between the cars and pull the pin.

Plaintiff went in between the cars to pull the pin,
and found it tight, and he thought Reed was not stout
enough to give him the slack, so he reached in with his
left hand to help Reed hold up the chain.   Still he could
not get the pin.   He then turned around facing the
west and took hold of the pin with both hands and got it
up a couple of inches.   He was in between the cars three
or four minutes and whilst he had hold of the pin shak-

ing it, the engineer without any signal or warning backed the train and caught him between the cars. The train backed something like fifty feet before plaintiff got out.

His shoulder was mashed between the cars perhaps twice, before he fell out from between them. His hurts were temporarily dressed and he was sent to the railway hospital at St. Louis. Reed who went underneath the car to unchain it was not injured.

No one notified the engineer that there was a chained-up car to couple, or that the plaintiff was going between the cars to uncouple it. He was merely signaled, when he got clear of the M. K. & T. crossing, to stop and stand still. As soon as the M. K. & T. train crossed over, the engineer without further signaling started to back west over this crossing to where the train was to be made up.

At this time plaintiff was standing with his back to the engine. There were about nineteen cars between him and the engine.

Emmert heard the noise of the cars coming back. He testified that it takes two men to pull a pin when a car is chained up, and stated that one man could not do it. Reed the foreman, however, testified that he never asked any one to help him pull a pin in such case—that he always got down under the car and pulled it himself.

He did so that day after plaintiff was hurt.

There are two ways of pulling a pin of a chained-up car. One way is to go between the cars and pull the pin and the other is to get underneath the car and pull it that way.

Emmert testified that he would not go in between cars when a drawbar was gone, to unchain them. He considered it too dangerous.

Plaintiff was severely injured. The first and second ribs on the left side were fractured, his collar bone broken, and his shoulder blade at the lower end, his left hand bruised and some other minor bruises on the body. There was no fracture or dislocation of the ribs near the sternum, nor any fracture of the shoulder

blade up near the shoulder. The evidence was conflict-
ing as to whether or not his injuries were permanent.

Because the petition alleges that plaintiff went be-
tween the cars to uncouple them, ''under the supervis-
ion and direction of his said foreman'' and he testified
that he was not directed to go between them to pull the
pin by his foreman, and the evidence shows that he did
so voluntarily, defendant contends that he was erron-
eously permitted to recover upon an admitted state of
facts wholly at variance with, and contradictory to, the
allegations of the petition.

But this is not all the petition alleges; upon the con-
trary, when fairly interpreted it alleges that while
plaintiff was in the performance of his duties as switch-
man and exercising due care and caution, the engine at-
tached to said train was suddenly, violently, negligently
and recklessly, without warning of any sort, and with-
out knowledge on his part, started back by its agents
and servants, driving the cars together, catching him
between them and injuring him. And the case was sub-
mitted to the jury upon that theory, as is clearly shown
by instruction numbered one given at the request of
defendant. It reads as follows:

''The court instructs the jury that the only negli-
gence alleged in plaintiff's petition, which caused the
plaintiff's injuries, is that the defendant through its
agents and employees, suddenly and without warning to
plaintiff, started its engine attached to train of cars
backward, while the plaintiff was between two cars of
said train, endeavoring to unfasten one of said cars,
which was defective in having a drawhead pulled out
which allowed said two cars to come together, and by
reason of which movement of said engine, the cars be-
tween which the plaintiff was were driven together, and
plaintiff hurt, mashed and injured.''

The case having been tried by both parties, and
submitted to the jury on the theory indicated by this
instruction, and one to the same import given on the
part of the plaintiff, defendant will not be heard to say
in this court, that the theory was an incorrect one.

[Tetherow v. Railroad, 98 Mo. 85; Whitmore v. Sup. Lodge, 100 Mo. 47; Jennings v. Railroad, 99 Mo. 394; Tomlinson v. Ellison, 104 Mo. 105; Walker v. Owen, 79 Mo. 563; Whetstone v. Shaw, 70 Mo. 575; State ex rel. v. Chick, 146 Mo. 645.]

It is said for defendant that there are two well-known methods of uncoupling cars when in the condition that the disabled car was at the time of the accident: one, by getting the cars far enough apart, and then going in between them to pull the pin; the other by going underneath the cars, slack the chain and then pull the pin, the first of which is much more dangerous than the other; and that the defendant having voluntarily and without direction or request adopted the most dangerous method, he must bear the consequences. But upon this phase of the case the court at the instance of the defendant instructed the jury as follows:

"And the court further instructs the jury that if they believe from the evidence that there were two ways in which to pull the pin and uncouple the car chained up to the one next to it, one a safe way and the other dangerous, and that without being directed by his superior officer to pull said pin at all, or to pull it in any particular way, he voluntarily adopted the dangerous way, and by so doing he was caught, crushed and injured, then he was guilty of such negligence, directly contributing to his own injury, as bars him from a recovery herein, and the jury will find for the defendant."

And it must be conclusively presumed that there was evidence tending to show that the course pursued by plaintiff in attempting to uncouple the cars was not any more dangerous than the other, otherwise, the instruction would not have been asked, and the jury having by their verdict in effect so found, defendant is in no position to complain on that score.

Whether or not plaintiff contributed to his own injury by first working at the pin with one hand, and, failing to lift it, then in turning his back towards the engineer and taking both hands in attempting to so do, when he could have turned his face, as contended by de-

fendant, was also a question for the consideration of the jury, and was fairly presented to them by instruction numbered three given in behalf of defendant. It is as follows:

"If the jury believe that in reaching in between the cars to uncouple them the plaintiff turned his face toward the back end of the train and away from the engine so that he could not see any movement of the engine or cars, when he could have turned his face toward the front end of the train, and could thus have seen any movement of the train, in time to have avoided injury, then in turning his face away from the engine and other cars in the train so that he could not see any movement of the engine or said cars, he was guilty of contributory negligence, and if the jury further believe from the evidence that he would not have been injured if he had turned his face toward the other cars and the engine, or that he was guilty of contributory negligence in not doing so, then the jury will find for the defendant."

These were questions of fact to be passed upon by the jury, and they having done so, under an instruction asked by defendant and found adversely to this contention, the verdict should not be disturbed upon those grounds. The evidence shows that plaintiff was in between the cars at the time he was injured, and the jury were evidently of the opinion from the evidence that even if his face had been turned towards the engine at that time he could not have seen its movement.

There was no error in the court's refusal to allow defendant in its cross-examination of plaintiff as a witness to ask him "whether he ever knew a person injured in a railroad accident to get well until after his case was tried." The inquiry was foreign to any issue in the case, threw no light whatever upon them, and was beyond the bounds of legitimate inquiry.

As to the claim that the court erred in compelling the defendant's witness Reed to answer the plaintiff's question, "Did you expect him [the plaintiff] to come in there?"—meaning between the cars, even if erroneous, which it is unnecessary to decide, it was not error pre-

judicial in its character, nor of sufficient importance to justify a reversal of the judgment upon that ground.

It is said that the verdict of the jury is contrary to the fourth, sixth and seventh instructions given in behalf of defendant, but when these instructions are considered in connection with all other instructions in the case as they should be, defendant has no room to complain. When taken all together they presented the case very fairly to the jury.

It is said that the verdict is grossly excessive, and evidences the fact that the jury were governed by prejudice or undue sympathy; that the plaintiff was a malingerer, and purposely kept his arm from getting well prior to the trial. The jury had the plaintiff before them, saw his wounds, saw and heard the witnesses while testifying, which offered them much better opportunities to judge as to whether or not plaintiff was a malingerer and to determine the extent of his injuries, and whether or not permanent, than we have. There is nothing in the verdict from which it can be inferred that it was the result of prejudice or undue influence. Indeed, much larger verdicts for injuries not more serious have been upheld by this court. [Gurley v. Railroad, 104 Mo. 211; Burdict v. Railroad, 123 Mo. 236.] It met with the approval of the court and should not now be interfered with by this court.

It is clear that the accident was the result of negligence on the part of the engineer to whose engine the cars were attached that occasioned it. He had stopped the train in obedience to a signal from the plaintiff as switchman. He was also signaled by plaintiff in accordance with the custom of the yardmen to stand still, but in disobedience or non-observance of these signals —and without any signal of any kind whatever, he put his engine in motion, backed up, caught plaintiff in between the damaged car and the one to which it was attached, thereby crushing his body, and seriously injuring him.

The judgment should be affirmed. It is so ordered. All of this Division concur.