# SUPREME COURT

OF THE

# STATE OF MISSOURI,

AT THE

**APRIL TERM, 1891.**

---

TOMLINSON, *Administrator*, v. ELLISON, *Appellant.*

DIVISION ONE.

1. **Practice in Supreme Court:** ESTOPPEL. Parties in the appellate court are bound by the positions assumed by them in the trial court.

2. **Gifts Causa Mortis:** DELIVERY. A legal essential to delivery of gifts in view of death is, that there shall be some manifestation of an executed purpose to deliver. A mere intent to deliver is not sufficient. Something must be done to show that the intent has been carried into effect.

3. ———— : ————. A gift *causa mortis* will fail in the absence of a delivery of the subject of the gift, or, at least, of the evidence of title thereto.

( 105 )

104 105
124 282

104 105
128 680

104 105
138 683
139 329
71a 402
72a 564

104 105
141 656
142 570
143 107

104 105
146 662

104 105
81a 492

104 105
155 669

104 105
87a 355

104 105
163 486

104 105
90a 626

104 105
168 ⁵119

104 105
172 ¹188

4. ———— : ————. Delivery of a gift *causa mortis* may be made to one person for the benefit of another. But delivery by the donor to his agent of a document, as evidence of title to certain notes given by the donor to his brother, to be placed among the donor's other papers in the agent's possession, without directions to deliver to the donee, the instrument remaining in the agent's hands until after the donor's death, will not constitute delivery of the subject-matter of the gift.

5. **Practice :** DISQUALIFICATION OF WITNESS : WAIVER. Where a party to a suit is disqualified to testify, the taking of his deposition by the adverse party constitutes a waiver of his incompetency ; but, if such waiver is relied upon as entitling him to testify, it should be so suggested to the trial court.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

THE action is in replevin for certain promissory notes, amounting, in total value, to about $35,000. The answer is a general denial.

Plaintiff is administrator of the estate of Francis F. Ford, deceased. The notes belonged to the latter in his lifetime.

The defendant is a nominal party or mere stakeholder, the real party interested adversely to plaintiff being Henry T. Ford, brother to the deceased.

The latter claims title to the notes under the following instrument, viz.:

"Know all men by these presents, that I, the within-named F. F. Ford, in consideration of $1 to me in hand paid, and the further consideration of love and affection, have assigned, and do by these presents transfer and assign, to my brother, H. T. Ford, or his assigns, the following described personal property, to-wit" ( Here occurs a detailed description of some twenty odd notes of various makers ).

"Now, I do by these presents assign to said H. T. Ford, or his assigns, the foregoing described notes and

all sums of money due or that may become due on the same. And I do authorize the said H. T. Ford in my name to demand, sue for, recover and enjoy the moneys due or to become due on the aforesaid notes.

"Witness my hand and seal this ninth day of January, A. D. 1886.

"[ Signed.]                    F. F. FORD ( Seal ).

"Attest:  D. ELLISON."

The cause was tried with the aid of a jury.

It appeared that defendant had had the custody and care of many of the papers of F. F. Ford for some time before the occurrences out of which this action arose. His testimony contained in a deposition read by plaintiff at the trial was ( in substance ) this :  He had some of the notes sued for and a part he never had ; those he had were taken for land sold and money lent.  F. F. Ford was in Kansas City for about three months prior to his death.  He had no office.  He was in witness' office a good deal.  About January 5, 1886, he was taken sick.  Some ten days before, he told witness he proposed to give his brother "Thornton" ( H. T. Ford ) these notes and most of his personal property.  He spoke to witness about drawing up the instrument three or four days after he was taken sick; he spoke of it, January 7, and witness finished it on the ninth.  Witness asked deceased "what he wanted done with the paper," and he said, "put it among the papers," or "with my other papers."  Ford signed the paper on the ninth and died about two weeks afterwards.  When the paper was signed, witness had the other papers of deceased in the safe of witness in his office, in an envelope all together ; that when H. T. Ford came to Kansas City a few days later ( and before F. F. Ford died ) witness told H. T. Ford that witness had it ( the instrument), and H. T. Ford said for it to remain in the safe just as it was ; afterwards he came over ( before his brother died ) and told witness he accepted of the

assignment; that witness had, ever since then, had possession of the papers mentioned.

The witness was a lawyer and knew that the two brothers were jointly interested in Kansas City land. Witness had acted as agent of F. F. Ford in selling land and loaning money and had learned from him of the terms of deceased's will; that F. F. Ford said he was going to give his notes and most of his personal property to his brother; that he sent for witness on being taken sick and told witness what to do; that, when the first draft of the paper was made, Mr. Ford noticed the omission of some notes; they were hunted up and inserted; the instrument was then finished; read to him; he made some change in it and then signed it, making the statement already mentioned as to its disposition.

What then followed is thus stated:

"*Q.* And you took the paper and put it in your safe? *A.* Yes.

"*Q.* What papers were in that envelope? *A.* The notes in my possession were in that envelope.

"*Q.* And you put it along with those notes? *A.* Yes.

"*Q.* Do you know how H. T. Ford ever came to know of it? *A.* I told him myself; he may have known of it from other sources, but I told him I had the assignment here, soon after he came.

"*Q.* What did he say? *A.* He said to let it be in the safe just as it was.

"*Q.* Would you at that time, from what the deceased had told you, prior to the sickness, of what took place at the time of the execution of the instrument, would you have delivered it? *A.* Yes.

"*Q.* If he had asked for it? *A.* Yes; I wanted to turn it over to him.

"*Q.* Did you say you offered to deliver it to him? *A.* Well, I think I did. He promptly said, 'let it be in the safe.'"

The witness got the data for the description of the various notes from a book, kept by deceased in a valise at his room.

In the course of the trial, evidence was given tending to show that, at the time, F. F. Ford executed the instrument, above described, he was of sound mind, and there was also evidence to the contrary.

It further appeared that F. F. Ford had made a will, January 25, 1884, with due solemnities. It was received in evidence. Its general features were that his widow was to have the use of the homestead, and also one-fourth of net annual income of the estate; their only child to have $10,000 worth of the real estate at twenty-one; $20,000 more of it at twenty-five; $25,000 more at thirty; $45,000 more at thirty-five, and the remainder at forty-five; that H. T. Ford should have, for life, one-eighth of the net annual income of the estate, excluding the homestead, and be discharged of all debts due by him to deceased. There were other dispositions of property and directions regarding its management that are not material to the present case.

Among other evidence the defendant produced and read the following letter to H. T. Ford from the deceased, received by the former about the time of its date, viz.:

"601 DEL. ST. KANSAS CITY, January 4, 1885.

"*Dear Brother :*—Your last at hand a day or two since; glad to hear. My health has not been as good in some respects as before. Thought it was inflammation of the lungs, but Dr. Porter thinks it is my heart; and now think so myself; am much troubled with shortness of breath and great weakness. I refer it all to my mental suffering for the past year or so. I have felt all along it was killing me. My previously weakened heart could not withstand it. Still I manage to keep on my feet and attend to business as well as I can. Am feeling some better now for a few days. I am not

yet through with repairs on hotel, and cannot yet report expense."

( Then follows a long statement of particulars regarding the management, repairs, etc., of real estate in Kansas City, after which the letter proceeds thus ): " Have had a talk with Ellison about my health, and property in his hands, *i. e.*, notes, mortgages, etc., to deliver direct to you in case of accident. I have, all told, $35,000 to $40,000 ; do not be alarmed by these statements ; they are only precautions ; they are not in my will which I carry with me. Will make full report of expenses when I get through. Hope In. will write when he gets to Washington. Weather very mild ; take care of your health and not overwork. Affectionately.                                   F. F. FORD."

The case was submitted to the jury under instructions of the court, referred to in the opinion, and a verdict for the plaintiff followed. After the necessary motions and exceptions defendant appealed to the supreme court. The other material facts appear in the opinion.

*C. O. Tichenor* for appellant.

( 1 ) The claim of H. T. Ford to the notes sued for is based upon a writing, clear in its terms, reciting a consideration and under seal. There is no question as to its execution, or as to its meaning. It was made in pursuance of a fixed purpose, evidenced by a letter from deceased to his brother as well as by a talk with defendant. ( 2 ) The whole question in each case of a gift *causa mortis* is whether the gift is complete, in so far as the donor is concerned. *William v. Giles*, 117 N. Y. 343 ; *Dalton v. Wobam*, 24 Pick. 261 ; *Grymes v. Hone*, 49 N. Y. 17. ( 3 ) There is no dispute about the facts as to delivery. It is simply a question of law. They show such a delivery as is required, which must be such as will place the property within the dominion

and control of the donee with intent to confer title upon him. *Duffield v. Elwes*, 1 Bligh. N. R. 497; *Stephenson's Adm'r v. King*, 81 Ky. 430; *Harris' Appeal*, 5 Watts and S. 498; *Crawford's Appeal*, 61 Pa. St. 6; *Ellis v. Secor*, 31 Mich. 186; *Shackelford v. Brown*, 89 Mo. 546. It was said in *Somers v. Pumphrey*, 24 Ind. 240: " The law does not prescribe any particular form of words or actions, as necessary to consummate delivery. Anything done by the grantor from which it is apparent that a delivery is intended, either by words or acts, or by both combined, is sufficient." *Folly v. Vantryl*, 4 Halst. 158; *Hillibrant v. Brewer*, 6 Texas, 51; *Barney v. Ball*, 24 Ga. 514; *Standiford v. Standiford*, 97 Mo. 231. (4) If there was no delivery a trust was created in the deceased for his brother as to the property described in the writing under seal. *Helfanstein's Estate*, 77 Pa. 331; *Bund v. Bumbing*, 78 Pa. 210; *Boone v. Bank*, 84 N. Y. 83; *Minor v. Rogers*, 40 Conn. 512; *Ellis v. Secor, supra*. (5) Defendant should have been allowed to testify. The statute ought to have been liberally interpreted, as its object is to remove and not to impose restrictions. *Nailor v. Williams*, 8 Wall. 109.

*Muckle & Winn* and *Warner, Dean & Hagerman* for respondent.

(1) To constitute a valid *donatio causa mortis*, the donor must part with all dominion over the property to the donee, to belong to him presently, as his own property, in case the donor should die without making any change in relation to it. *Huey v. Huey*, 65 Mo. 689; *Cook v. Brown*, 34 N. H. 460; *Walter v. Ford*, 74 Mo. 195; *McCord's Adm'r v. McCord*, 77 Mo. 188; *Standiford v. Standiford*, 97 Mo. 231; *Weisinger v. Cooks*, S. Rep. June 11, 1890, p. 494; *Drew v. Hagerty*, 81 Me. 231; *Appeal of Walsh*, 122 Penn. St. 177; *Yancy v. Field*, 8 S. E. Rep. 721. (2) A gift which is to take effect

only upon the death of the donor is not valid, but a testamentary disposition of property, and in violation of the statutes. *McGrath v. Reynolds*, 116 Mass. 566 ; *Baskett v. Hassell*, 107 U. S. 602 ; *Powell v. Hellicar*, 26 Beav. 261 ; *Reddel v. Dobree*, 10 Sim. 244 ; *Farquaharson v. Cave*, 2 Colly. C. C. 356 ; *Hatch v. Atkinson*, 56 Me. 324 ; *Bunn v. Markham*, 7 Taunt. 224 ; *Coleman v. Parker*, 114 Mass. 30 ; *Wing v. Merchant*, 57 Me. 383 ; *Mc Willis v. Van Vacter*, 35 Miss. 428 ; *Edgerton v. Edgerton*, 17 N. J. Eq. 419 ; *Michener v. Dale*, 23 Pa. St. 59. ( 3 ) A written assignment of personal property by way of a gift *causa mortis* to a person named therein which is never delivered to such person, but is detained by the party who executes the assignment or his agent for him, does not create a trust in favor of the person designated as beneficiary in the assignment. *Trough's Estate*, 75 Pa. 115 ; *Zimmerman v. Streeper*, 75 Pa. St. 147. ( 4 ) The appellant was properly not permitted to testify against the administrator in favor of himself as to a transaction had with the testator.

BARCLAY, J.—The cause was submitted by both parties in the trial court on the theory that it was governed by the law applicable to gifts in view of death. The instructions given at the instance of each party plainly show this. We, therefore, review the case from the legal standpoint thus furnished, since parties to litigation are regarded as bound here by the positions assumed by them in the trial court, as held in *Tetherow v. Railroad* ( 1888 ), 98 Mo. 85, and other recent precedents. *Whitmore v. Sup. Lodge* ( 1889 ), 100 Mo. 47 ; *Jennings v. Railroad* ( 1889 ), 99 Mo. 394.

The vital issue in the case, as shown by the accompanying statement of facts, is upon the question of delivery of the paper by which title to the notes is claimed to have been transferred to H. T. Ford. The evidence on this point is meager. Its effect is to show that, after F. F. Ford signed it, he directed defendant,

his agent ( who had charge of notes and other papers of his ), to put it among the papers, or his papers. This direction was obeyed. The instrument thus remained in defendant's charge until after F. F. Ford died. No instruction was given defendant by the latter to deliver the paper to H. T. Ford.

One legal essential to delivery of gifts in view of death is, that there shall be some manifestation of an executed purpose to deliver. A mere intent to deliver is not sufficient. Something must be done to show that the intent has been carried into effect. The custody of the document is not always decisive of this issue, though it usually throws light upon its solution.

A delivery may be made to one for the benefit of another person ; but, in the case before us, the document in question was delivered to the agent, not of the receiver but of the giver, to be placed among the papers of the latter, where it remained until death put a stop to all his unfinished transactions.

Such a gift, as is sought to be here established, must fail in the absence of a delivery of the subject of the gift, or of the evidence of title thereto, at least. As to the former, it is not claimed that there was a delivery. Whether more than the delivery of the instrument, conveying title, is necessary to complete the gift need not now be discussed, since, in our view, the failure of proof of delivery of the instrument itself is obviously fatal to the claim of title in H. T. Ford. The case does not require us to further penetrate the labyrinth of law concerning gifts in view of death. The single phase of the subject above presented is decisive against defendant.

As we find the defendant's own testimony offers no obstacle to plaintiff's recovery on the conceded facts, it does not seem necessary to review the instructions in detail.

II. A point of practice remains. Defendant was introduced as a witness in his own behalf at the trial;

VOL. 104—8

but was excluded on plaintiff's objection. Afterwards plaintiff read defendant's deposition, given in this cause at plaintiff's instance. It is claimed that the court erred in its exclusion of defendant's oral evidence.

The fact that plaintiff had taken defendant's deposition in the same action amounted to a waiver of any alleged incompetency on his part; but, when defendant was called to testify orally, the attention of the trial court was not directed to any waiver. Without it, defendant was clearly incompetent under the statute on the subject. R. S. 1879, sec. 4010. If defendant relied upon a waiver, as entitling him to testify, that should have been suggested to the trial court. This was not done. After the waiver became apparent (by the reading of the deposition by plaintiff in rebuttal), defendant did not then offer to testify in explanation, or otherwise, with reference to the matters contained in the deposition.

We perceive nothing in the rulings on this point prejudicial to the substantial rights of defendant.

The judgment is affirmed. SHERWOOD, C. J., BLACK and BRACE, JJ., concur.