## FITZPATRICK et al. v. GRAHAM.

(Circuit Court of Appeals, Second Circuit. April 16, 1903.)

### No. 134.

1. GIFT—EVIDENCE TO ESTABLISH—QUESTION FOR JURY.

While it is the rule that clear, strong, and convincing evidence should be required to establish a gift from one deceased, what fulfills such requirement is for the trier of facts to determine; and a court is not justified in dismissing a complaint in ejectment against the heirs at law of a decedent, based on the alleged delivery by the deceased to plaintiff of a deed conveying the property, because the only evidence to support such allegation is the uncorroborated and contradicted testimony of plaintiff. Such testimony being competent in a federal court, under Rev. St. § 858 [U. S. Comp. St. 1901, p. 659], its credibility is for the jury; and, where direct and positive, it is sufficient, if believed, to sustain the complaint.

2. INSTRUCTIONS—SUFFICIENCY OF EXCEPTION.

Defendants orally requested the court to charge that the jury could take into consideration the failure of plaintiff to call a person as a witness to corroborate her own testimony as to the execution of a deed, and

the court charged that the jury might take into consideration on both sides of the question the failure to call such witness. *Held* that an exception "to refusal of defendants' requests to charge" did not raise the question of error in charging that the jury might consider, also, the failure to call the witness on defendants' side.

3. SAME—QUALIFICATION OF REQUESTED CHARGE.

Where the mother of certain witnesses was a defendant in an action of ejectment, it was not error for the court to call the attention to such fact, as qualifying a charge, given by defendants' request, that such witnesses were not interested parties.

4. DEED—NECESSITY OF SEAL—NEW YORK STATUTE.

Under Laws N. Y. 1896, p. 593, c. 547, which provides that a grant of real estate in fee shall be "subscribed" by the grantor, such a deed is not required to be sealed.

5. EVIDENCE—COLLATERAL FACTS.

Where the issue was as to the execution of a deed of gift by a decedent shortly before her death, and in connection with the disposition of all her property, testimony as to the disposition made of her personal property at the same time may properly be considered as throwing some light on the transaction.

6. EJECTMENT—LIABILITY FOR MESNE PROFITS.

Defendants in an action of ejectment cannot be held liable for damages for withholding possession prior to the time when, by the death of an ancestor, they first obtained title, or a claim of title, to the property.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 116 Fed. 1021.

Charles E. Miller, for plaintiffs in error.

Wm. H. McQuaid, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff was a cousin of Ann Cassidy, who died August 28, 1897, intestate, leaving her heirs at law, her brother Peter A. Cassidy, her sister Mary E. Fitzsimons, and a son of a deceased sister, John P. McNally. Peter Cassidy died in February, 1899, leaving five children, three of whom are minors. John P. McNally, who was a lunatic, died before the commencement of this action. The foundation of the action is a deed of the premises which plaintiff alleges that Ann Cassidy executed and delivered to her, as a gift, a few days before her death. The main issue in the case was whether or not such deed was executed and delivered. The facts in the case will sufficiently appear in the discussion of the several assignments of error which have been argued here.

1. It is assigned as error that the court refused to dismiss the complaint on the ground that the allegations of the complaint as to execution and delivery had not been sustained. The sole witness to these facts was the plaintiff herself. She testified that on the day named a deed of the premises to witness was produced, was examined by others then present, and was handed to Ann Cassidy. On these propositions she was corroborated by the testimony of defendant's witnesses, or some of them, and the evidence shows that deceased had several times expressed a wish to give these premises to plaintiff. She further testified that thereupon deceased asked one Father Colton to read the

paper to her, which he did; that while he was reading she left the room for a moment, and, when she came back, saw deceased's hand stretched for the paper, to take it from Father Colton, and the pen was right beside her; that, as she took the pen, witness again stepped into the other room, and, when she came back, Ann handed her the paper, saying, "Here is a home for you;" that she looked at it, and saw Ann Cassidy's signature on it, with which she was quite familiar; that she folded the paper and put it in Ann Cassidy's desk; that subsequently plaintiff and deceased examined the deed together, when she again saw the signature, and they frequently referred to it in conversation with one another; that at the very moment of Ann Cassidy's death the brother, Peter Cassidy, went to the desk and took the deed; that plaintiff expostulated with him and demanded it, but he laughed at her, pushed her away, and kept the deed, which she never saw afterwards. This testimony, if properly admitted and fully credited, would amply sustain the allegations of the complaint as to execution and delivery of the deed. The testimony undoubtedly relates to conversations with persons deceased, the witness being interested in the issue tried; but, since the defendants are not executors or administrators of the deceased, the peculiar language of section 858, Rev. St. [U. S. Comp. St. 1901, p. 659], makes such testimony competent, even against the heirs at law. In the state courts—probably in the courts of every state in the Union—such testimony would be excluded in such a suit, as it ought to be; but we must take the statute as we find it, and hold that the testimony was properly admitted. Indeed, defendants' brief concedes that it is. It is contended, however, that although, under the statute, it must be admitted, nevertheless it is so tainted with the temptation of self-interest and with the opportunity for undetectable falsification that it should not be held persuasive unless it be corroborated. The authorities cited do not sustain the proposition. In the opinion of Judge Jenkins in Harman v. Harman, 17 C. C. A. 479, 70 Fed. 894, it is asserted that courts have "a right, in weighing testimony, to consider the great interest that the witness has at stake, and have a right, also, and it is their duty, in such a case as this, to consider that he speaks knowing that no human power can summon from the grave the one who might contradict him or dispute his statements," and also that courts "should insist that such evidence should in all essential particulars stand uncontradicted, and should be fully corroborated." But that was in an equity suit, where the court was the trier of the facts, and Judge Jenkins was a dissentient; the majority of the court finding the testimony, despite contradictions or lack of corroboration, sufficient to warrant a reversal. In Kenney v. The Public Administrator, 2 Bradf. Sur. 319, the sole witness to substantiate a donatio causa mortis was the donee, and the court remarks that "it would be a precedent of the most dangerous character to hold such a gift valid on the naked evidence of the donee, uncorroborated by any circumstances"; and in view of the fact that the donee was guilty of concealment and falsehood at a period when the validity of the gift, if the transaction was fair and honest, might have received the sanction of the decedent before competent witnesses, the court was led to the conclusion that she "has failed in producing the clear proof

which the nature of the claim requires." But Surrogate Bradford in that case was sitting as the trier of the facts. The same was the situation in Tilford v. Bank for Savings, 31 App. Div. 565, 52 N. Y. Supp. 142, where the decision of the court at special term was reviewed on appeal; and in Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583, which also came up on review from the special term. The utmost that the authorities hold is that in actions of this sort very clear, strong, and convincing testimony should be required, but what evidence fills these requirements it is left for the trier of the facts to determine. Defendants would have been entitled to have the jury instructed on the lines indicated in the citations supra, but were not entitled, as matter of law, to have the complaint dismissed, if there were sufficient testimony to sustain its allegations, provided the jury believed such testimony.

It is true that plaintiff's evidence was contradicted; that there were facts testified to which seemed inconsistent with her story; that proof was given of statements made by her which could not be harmonized with her narrative; but the question as to the credibility of these other witnesses and of herself was for the jury, and it makes no difference that the court, if it had to pass upon the evidence, would have reached a different conclusion. The rule by which the motion to dismiss is to be tested is laid down in Pleasants v. Fant, 89 U. S. 116, 22 L. Ed. 780, thus:

"Not whether, on all the evidence, the preponderating weight is in his favor (that is the business of the jury); but, conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is fairly entitled to, is it sufficient to justify a verdict?"

The old rule that a case must go to the jury if there is a scintilla of evidence to support it has been held unreasonable (Commissioners v. Clark, 94 U. S. 284, 24 L. Ed. 59), but there is far more than a scintilla of evidence here. In Pleasants v. Fant, supra, there was only some slight evidence which "had some tendency to establish a participation in the profits," but which was held insufficient to sustain a finding that defendant was a partner. In the case at bar, however, the testimony to the execution and delivery of the deed was direct, specific, and comprehensive. If it were uncontradicted, verdict for plaintiff must follow. It may have been false, or the other evidence in the case may have been such as to convince an unprejudiced mind that the witness was untruthful; but those were matters properly left to the jury upon the record as it stood when the case was closed.

2. Error is assigned that the court refused to charge the jury that they could take into consideration the failure of plaintiff to call Father Colton. From the narrative of the facts given above, it seems quite evident that Father Colton must have been in a position to see whether Ann Cassidy executed the deed or not. It appears that he received a considerable amount of personal property from the deceased, presumably for pious uses, and there is nothing in the record which throws much light upon whether his relations with either of the parties were friendly or the reverse. At the close of the charge, defendants' counsel made four oral requests to charge, all of which were complied with. He then asked for a charge that "the jury can

take into consideration the failure of plaintiff to call Father Colton to corroborate her unsupported statement as to the execution of the deed." To this the court replied:

"I do not think I will attempt to go into that question. I do not know why Father Colton was not called. It is not shown here. The jury can take into consideration upon both sides of this question the fact that Father Colton was not called."

To this at the time no exception was taken, but defendants' counsel made two more requests to charge, one of which was modified, and the other reserved. Thereafter he "excepted to refusal of defendants' requests to charge." This exception does not reserve the point which was urged upon the argument, viz., that no obligation to call the witness Colton rested upon defendants. The court did not refuse the request to charge that the jury could take into consideration, as to plaintiff's side, the fact that Father Colton was not called as a witness. If defendants wished to reserve the point that it was error to .charge that they might also consider the same fact as to defendants' side, the exception should have been specific.

3. Defendants requested the court to charge that "the defendants' witnesses Judge Fitzsimons and Miss Fitzsimons are not interested parties." The court charged that in no other way were they legally interested, except that their mother is one of the defendants. The charge was correct. They had no direct pecuniary interest in the, case. But they certainly did not stand entirely neutral, and it was not error to call the jury's attention to the fact that their mother was one of the defendants.

4. It is assigned that the court erred in admitting "the statement of Father Colton to plaintiff," and in "permitting the introduction of the deed to Ann Cassidy, and her policy of insurance." Plaintiff testified, without objection, that, in the presence of Ann Cassidy and others, Father Colton handed her these documents, saying: "You are the most interested party in this paper. Write your name on it," or on the envelope, which she did. When subsequently these documents were offered in evidence, witness repeated that statement. Defendants objected "to them as immaterial and irrelevant," and reserved an exception to their admission. The documents were wholly irrelevant, and it was technical error to admit them, but it could have in no way prejudiced the defendants. By themselves, the documents proved nothing and suggested nothing. What defendants complain of is that the jury might have been influenced by the circumstance that these papers were given to plaintiff, and by the remark of Father Colton which accompanied the delivery. But the testimony as to both delivery and remark was not objected to, and no exception reserved.

5. It is contended that the court erred in charging that "it appears undisputed that it was the purpose and intent of Ann Cassidy to convey the property to plaintiff." No exception, however, was reserved to this part of the charge.

6. The objection that the conveyance testified to by the plaintiff was not sealed by the grantor is unsound. Section 208 of the real property law of New York (chapter 547, p. 593, Laws 1896) provides only that a grant in fee, etc., shall be "subscribed"; thereby amending

the Revised Statutes, which provided that it should be "subscribed and sealed."

7. It is contended that the court "erred in refusing to charge the request that the jury should disregard the testimony as to the personal property of Ann Cassidy." In response to such request the court said: "They should disregard it, except so far as it bears upon this question. The disposition of the personal property has nothing whatever to do with the disposal of the real estate." We find no error in thus qualifying the request. The disposition of the premises in suit was taken up by the deceased on her deathbed in connection with the disposition of all her property, and, so far as her acts in connection with other property took place simultaneously with those touching the real estate in suit, the jury might fairly consider them as shedding some light on the transaction. If it was intended by the request to warn the jury against some particular piece of testimony, it should have been more specific.

8. The record shows that Peter Cassidy died in February, 1899. It was not until after his death that his children had any title or claim of title. Upon no possible theory could they be held liable for withholding possession prior to that date. Nevertheless judgment has been entered against them for the full amount of mesne profits ($3,000) from August, 1897, to the trial. To that extent the judgment should be modified. If plaintiff will stipulate that such a modification may be made by the court below, the judgment will be in all other respects affirmed. Otherwise it will be reversed.