J. W. CUNDIFF, Respondent, v. ROYAL NEIGHBORS OF AMERICA, Appellant.

Kansas City Court of Appeals, February 19, 1912.

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Warranty: Estoppel.** Where a fraternal beneficiary association had notice at the time of the issuance of the benefit certificate that the applicant had been previously rejected by it, it could not set up the falsity of the statement in the application that she had not been rejected.

2. ————: ————: **Pleading.** While estoppel, as a general rule, must be pleaded, yet if a party proceeds to trial without objection to the evidence, the necessity of pleading the same is waived.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*E. A. Enright, James A. McLane* and *W. J. Gentry* for appellant.

*Harris & Finley* for respondent.

BROADDUS, P. J.—This suit was instituted in the circuit court of Boone county, and was an action to recover one thousand dollars, on a benefit certificate issued by the defendant on the life of the wife of the plaintiff. A trial before a jury resulted in a verdict for the plaintiff for the amount sued for; and the defendant, after filing an unsuccessful motion for a new trial, appealed.

The petition was in the usual form; it alleged that the defendant issued its benefit certificate to Eunice Cundiff, in the sum of $1000, payable to the plaintiff, and that the plaintiff and also the said Eunice Cundiff had fully complied with all of the terms

and conditions of said benefit certificate. The answer was a general denial, then an admission that the defendant is and was a fraternal beneficiary association duly authorized to do business in Missouri, and that it issued its benefit certificate, in said sum, on the life of said Eunice Cundiff, payable to the plaintiff. The answer then alleged that said contract consisted, first, of the benefit certificate sued on, second, the application for said benefit certificate, and third, the by-laws of the defendant. That it was specially made a part of the contract that the questions in said application should be truthfully answered by the said Eunice Cundiff, and that any false answer on any subject would vitiate said benefit certificate. It was then alleged that, in her said application, the said Eunice Cundiff stated that she was of sound mind and body, and that no examining physician for any life insurance company, association or society had ever rejected her application; and that she had never made application for life insurance or indemnity, and withdrawn the same before final action; and that all three said answers were false. The answer further alleged that the deceased had not paid all assessments due, which by section 44 of the by-laws of defendant she was bound to pay; and also alleged that it was made a condition precedent to liability that the said Eunice Cundiff should be in sound health at the time of delivery of said benefit certificate, and that she was not in sound health at said time. A reply put in issue the new matter of defendant's answer.

The plaintiff's evidence tended to show that in 1908, Eunice Cundiff was the wife of plaintiff, having been married in 1901. The plaintiff and his wife lived on a farm near Englewood, in Boone county, Missouri, and the plaintiff operated a sawmill in addition to a small farm on which he and his family lived. In 1904, Mrs. Henrietta Smith accompanied Mrs. Cundiff to the office of Dr. W. F. Walter, who was the

examining physician for Snow Drop Camp, a subor-
dinate lodge of the defendant located at Englewood.
Dr. Walter then examined Mrs. Cundiff for life insur-
ance in the defendant society, ascertained that her
lungs were affected to such extent that she was not a
suitable person to receive a benefit certificate, and de-
clined to recommend her application.   On April 11,
1908, Eunice Cundiff again went to see Dr. W. F.
Walter, who was still the examining physician of Snow
Drop Camp and again asked to be examined for life
insurance in defendant society.   Mrs. Henrietta Smith
again accompanied Mrs. Cundiff to Dr. Walter's of-
fice, and Dr. Walter then and there declined to exam-
ine Mrs. Cundiff for the reason that he had previously
examined her, had rejected her application and that
he knew there was no use of examining her again. Mrs.
Cundiff and Mrs. Smith then went over in Callaway
county and visited the office of Dr. G. D. Miller, since
deceased, and solicited Dr. Miller to examine Mrs.
Cundiff.   He did so, wrote out his examination in the
usual form, took the application in writing, which was
signed by Mrs. Eunice Cundiff, and forwarded the
same to the defendant.   It was upon this application,
accompanied by the certificate of Dr. Miller, that the
benefit certificate here sued on was issued.   In said
written application, Mrs. Cundiff stated that no phy-
sician had previously examined her for life insurance
or indemnity and declined to recommend her.   She
further stated that she had never made application to
any insurance company, association or society for in-
surance or indemnity, and withdrawn her application
before final action thereon.   She also stated, in said
application, that she was of sound mind and body, and
free from disease.

The plaintiff's evidence further tended to show
that Mrs. Cundiff died on May 24, 1911, that the usual
proof of death was furnished the defendant, and that
the defendant declined to pay any sum whatever.

There was also some evidence tending to show that Mrs. Cundiff was in good health at the time of the issuance of the benefit certificate sued on, that she attended to her usual household duties, etc.

Defendant's evidence tended to show that Dr. Walter, who had examined Mrs. Cundiff for membership in the defendant's order had declined to recommend her for insurance in the first instance because he found that her lungs were affected and that he refused to examine her the second time she applied to him, for the reason that he was satisfied with his previous examination. His evidence also was to the effect that he had frequently treated her for consumption.

In January, 1901, Dr. Carryer treated her for pneumonia and several years thereafter for consumption. His statement was that she had consumption. He was unable to state the time of his last treatment of her. Defendant introduced much evidence tending to show that Mrs. Cundiff had consumption and that her health generally was bad.

In rebuttal Dr. Norris testified that he examined Mrs. Cundiff on February 11, 1910, for life insurance. His statement was: "I would say she was in good health then and constitutionally sound." But he stated that he did not examine her lungs. The policy and the application for insurance were in evidence as was also the application made in 1904, which was rejected by the company because Dr. Walter refused to recommend the applicant as a suitable party for insurance.

It is contended that Mrs. Cundiff made a false statement in her application for insurance. She was required in her application to answer the following question. "Has any examining physician or physicians for life insurance company, association or society ever declined to recommend your application," She answered, "No." Now this answer was untrue

as she had been examined by Dr. Walter who declined to recommend her for life insurance in defendant's company. Her statement constituted a warranty and its falsity as a rule would forfeit the policy unless waived by the company. [Francis v. A. O. U. W., 150 Mo. App. 347.]

But it is insisted by respondent that as the defendant had the prior application of Mrs. Cundiff in its possession and knew that Dr. Walter had declined to recommend her for membership in the order and for insurance, it is estopped from setting up the warranty as a defense. In the application the question and answer next preceding the one discussed are as follows: "Have you ever been rejected by any life insurance company or companies, mutual benefit association or associations, or fraternal beneficiary society or societies?" "Yes." "If so, give the name of same and the year you were rejected." Answer, "R. N. A., March 20, 1904." With the former application in its possession and the report of its examining physician refusing to recommend Mrs. Cundiff on the ground that she had consumption and to which particular reference was made in her application when the policy in suit was issued, the appellant ought to be estopped from availing itself of the said warranty, having received all the premiums provided for in the policy. In a well considered case it is held that: "Where an insurance company had notice at the time of the issuance of the policy that the applicant had been rejected by it, it could not set up the falsity of the statement in the application that he had not been rejected." [O'Rourke v. John Hancock Mut. Life Ins. Co., 50 Atlantic, 834. And substantially to the same effect it is so held in Rhode v. Life Ins. Co., 93 N. W. 1076.]

It is, however, insisted that as the question is one of estoppel it should have been pleaded. As evidence upon the question was brought out by the testimony of both parties and thus established the allegations of

the answer that was put in issue by the general denial in plaintiff's reply, it is argued that respondent under these circumstances cannot now change front and present a new issue. It is said: "Parties in the appellate court are bound by the positions assumed by them in the trial court." [Tomlinson v. Ellison, 104 Mo. 105; Witascheck v. Glass, 46 Mo. App. 209.] And that an affirmative defense should be clearly set forth. [Reese v. Garth, 36 Mo. App. l. c. 645; Bliss on Code Pleading, Sec. 352.] And it is said in Kansas that estoppel, if relied upon, must be pleaded. [Union C. S. Co. v. Bragg, 63 Kans. 291.] It is, however, held in Missouri that, while estoppel as a general rule must be pleaded, yet if a party proceeds to trial without objection to the evidence, the necessity of pleading the same is waived. [McDonnell v. De Soto Sav. & Bldg. Assn., 175 Mo. 250.] The facts relating to the question were not only brought out by the respondent, but also by the appellant, such being the case, the necessity under the Missouri authority for pleading the estoppel was waived.

The appellant asked an instruction in the nature of a demurrer to plaintiff's case which the court refused to give. Other instructions also offered by the appellant were rejected by the court. The court upon its own motion gave several instructions which we think properly presented the law of the case in the most favorable light for appellant to the jury. No instruction for either party presented the question of waiver to the jury and we presume it was not considered.

The instructions on both sides had reference to two questions, viz: The health of Mrs. Cundiff at the time she was insured, and the truth or falsity of her answers to the questions contained in her application for insurance. The verdict of the jury was to the effect that her representations were true and that her health was good. The verdict on the last proposition

was sustained by substantial evidence, although the preponderance was in favor of the appellant. Notwithstanding the evidence of Dr. Walter that she had consumption in 1904, there was much evidence to show she was in good health in 1908, when she became a member of the appellant order.

The respondent should have asked the court to instruct on the question of estoppel, and as it is a rule a party cannot try his case upon a different theory in the appellate court from that which he occupied in the trial court if we adhere strictly to such rule the cause should be reversed and remanded at his costs for a new trial. But as the matter of estoppel cannot be kept out of the case as it is inseparably connected with the appellant's defense, we can see no good reason for sending it back for a re-trial when the court would be bound to instruct the jury to find for the respondent as to that matter. It is true appellant would get the benefit of another trial on the other issue, whether or not Mrs. Cundiff was in good health at the time she made her said application for insurance. But as it has had a fair hearing on that issue, it would be bad policy to have it re-tried in order on mere chance that a different and more favorable result to appellant would follow. In the light that we have considered the case we believe it should be affirmed, and it is so ordered. All concur.