**KLING v. McCABE et al.**

Circuit Court of Appeals, Eighth Circuit.
November 14, 1929.

No. 8557.

Thomas A. Daily, of Indianapolis, Ind. (Charles T. Hanna, of Indianapolis, Ind., and Carter, Jones & Turney and Harold R. Small, all of St. Louis, Mo., on the brief), for appellant.

William F. Woerner, of St. Louis, Mo. (George O. Durham, of St. Louis, Mo., on the brief), for appellees.

Before STONE, Circuit Judge, and MUNGER and REEVES, District Judges.

MUNGER, District Judge. This suit was brought by the bill of complaint of Mrs. Anibel W. Kling and Lewis C. Willis, as plaintiffs, against Duran P. McCabe, personally and as executor of the last will and testament of Mary E. Culver, deceased, to recover corporate stocks which the plaintiffs claimed as a gift causa mortis made by Mrs. Culver. The making of the gift was denied in the answer, and, after hearing the testimony, a decree was entered, dismissing the bill. Lewis C. Willis refused to appeal, and an order was made allowing the separate appeal of Anibel W. Kling. Mrs. Culver, a widow, living in St. Louis, Missouri, died there on July 20, 1925. She had no descendants. She left a last will which was duly admitted to probate. It was dated August 21, 1924. By its terms she disposed of an estate of a value of about half a million dollars. In brief, it bequeathed $1,000 to each of seven of her nephews and nieces, or to their descendants. If the legatee had no descendants, the legacy was to lapse and to become a part of the residue of her estate. She bequeathed to an old time friend, Mrs. Kilpeck, if she survived the testatrix, 50 shares of stock in the American Telegraph & Telephone Company. To another friend, Mrs. Waters, if she survived the testatrix, she bequeathed 75 shares of stock in the Boatmen's Bank of St. Louis. She bequeathed 150 shares of stock in the Pennsylvania Railroad Company to a blind girls' home.

The executor was allowed to lease or sell the real estate and household furnishings, the proceeds to be distributed as part of the residue of her estate.

After making these bequests, the will contained this provision: "All the rest and residue of my estate, including lapsed legacies and the proceeds of the sale or letting of real estate, I give, devise and bequeath to my following named nephews and nieces, namely: George Comegys, Courtney Comegys, John Comegys, Mrs. Roxie Chandler, Mrs. Carrie Hurt, Mrs. Annabelle Kling and Louis (or Lucius) C. Willis, share and share alike, and in the event any of said beneficiaries be dead at the time of my death then the share of such beneficiary so dying I give, devise and bequeath to the descendants of such deceased beneficiary, if any, in the proportions fixed by the statute of descents of the State of Missouri, in effect at my death, and in the event there be no such descendants of the beneficiary so dying then such legacy to lapse and become part of the residue of my estate."

After this will was executed, a copy of it was deposited in a safety deposit box of a trust company in St. Louis, and a memorandum was attached, by a separate strip of paper, giving notice that the original will was in the possession of an attorney in St. Louis.

At the time of Mrs. Culver's death, and probably at the time her will was executed, she had in this safety deposit box, 8 certificates representing 881 shares of the common stock, and 1 certificate representing 1,081 shares of the preferred stock of the Majestic Manufacturing Company, of a par value of $158,500; 6 certificates representing 600 shares of stock in the Pennsylvania Railroad Company, of a par value of $30,000; 7 certificates representing 350 shares of stock in the Boatmen's Bank of a par value of $35,000; 10 certificates representing 800 shares of stock in the American Telegraph & Telephone Company; United States Liberty bonds and treasury notes of a par value of $169,000; a

promissory note given to her for $7,800; some deeds and miscellaneous paper, and a small amount of jewelry. The records of the trust company show that Mrs. Culver applied for her box twice on August 21, 1924, the date of her will, being accompanied by a woman on each visit, once on September 18, 1924, accompanied by a man and a woman, and once on September 24, 1924, no one being with her on that occasion. When the safety deposit box was opened a few days after Mrs. Culver's death, there was found attached to the copy of the will, two slips of paper, each of them containing a memorandum in the handwriting of Mrs. Culver and reading as follows:

"I wish for Mrs. Kling my niece and L. C. Willis to have all my stock that is not given to any one in the will. Mrs. Culver."

"I wish Mrs. Kilpeck to have all of my Stock in Telegraph telephone Company instead of Fifty shares as is named in my Will. Mrs. Culver."

The plaintiffs' bill alleged that Mrs. Culver, on March 18, 1925, in apprehension of her impending death told Mrs. Kling that she had given to her and to her brother, Lewis C. Willis, her stocks in the safety deposit box, and delivered the key to the box to Mrs. Kling with the intention to give to her and to her brother all the corporate stock, except such as was specifically bequeathed by the will to the blind girls' home, to Mrs. Waters and Mrs. Kilpeck, the stock so sought to be recovered having a par value of $327,250.

▮ A gift causa mortis must be absolute and made by one in apprehension of his impending death, and intended to take effect and operate as transfer of title in the event of his death. It is revocable by the act of the donor prior to his death, and is revoked if the donor recovers from the sickness, or escapes from the danger, in view of which the gift was made. It is essential that the thing given shall be delivered to the donee, or to his use, "The intention to give must be accompanied by a delivery and the delivery must be made with an intention to give." 3 Pom. Eq. Jur. §§ 1146, 1149. It has often been decided that the evidence to establish gifts causa mortis, in cases of this nature, must be clear and satisfactory, and will be closely scrutinized. 3 Pom. Eq. Jur. § 1146; Parish v. Stone, 14 Pick. (Mass.) 198, 25 Am. Dec. 378; Grymes v. Hone, 49 N. Y. 17, 10 Am. Rep. 313; Hatch v. Atkinson, 56 Me. 324, 96 Am. Dec. 464; Devol v. Dye, 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439; Foley v. Harrison, 233 Mo. 460, 136 S. W. 354; In re Van Alstyne, 207 N. Y. 298, 100 N. E. 802; Gano v. Fisk, 43 Ohio St. 462, 3 N. E. 532, 54 Am. Rep. 819; Fitzpatrick v. Graham (C. C. A.) 122 F. 401; Grignon v. Shope, 100 Or. 611, 197 P. 317, 198 P. 520; Atchley v. Rimmer, 148 Tenn. 303, 255 S. W. 366, 30 A. L. R. 1481; 28 Corp. Jur. 704; Thornton on Gifts 193.

▮ Mrs. Culver was 84 years of age when she died. She had executed prior wills in 1913 and 1921 and two in 1923. She had a period of illness in 1919, but was active and apparently recovered her health afterwards. In March, 1925, she became ill with what was supposed to be influenza. After a few weeks her health improved. It is doubtful if she left her home until the time of her death, but she was able to care for her home and her ordinary business. The appellant, Mrs. Kling, visited Mrs. Culver soon after she was taken ill in March, 1925, and remained for about two weeks. It is claimed that the key to the safety deposit box was delivered during this visit. To establish the delivery of the key and the intention of Mrs. Culver in delivering it, Mrs. Kling was called as a witness. The defendant objected to her competency as a witness under section 5410 of the Revised Statutes of Missouri (1919), but the court allowed her to testify, reserving a ruling upon the objection. Mrs. Kling testified that on the occasion of this March visit, she had a conversation with Mrs. Culver on Sunday, March 15, 1925, or the next day. She testified: "* * * And she told me that morning of her burial, she wanted * * * she said there was a dress hanging in the closet that she wanted me to examine and see if it was proper for her to be buried in and if it was not, she wanted me to secure something that was proper. She said that she had given my brother and I stocks that she had intended for my mother and that. * * * She had in her hand her key and she put her hand this way (indicating) and gave me the key to her safety box and she said, You will need this. I said, 'Well, Aunt Mary, that is lovely. I thank you.' She told me that I was to call Mr. Vierling on her death and Mr. Vierling would tell me what to do. She referred to Mr. Vierling of the Mississippi Valley Trust Company."

Later in her testimony she undertook to relate the conversation with Mrs. Culver, but she gave the time of this conversation as the last time she visited Mrs. Culver, which her testimony fixed as near the 10th of June, 1925. This testimony was given over a renewed objection to her competency. She testified: "I had a conversation with my Aunt with reference to what was to be put in her coffin to be buried with her. It had been an understanding for a long while, and the last

time when I visited her and she gave me the key for her safety box, she reminded me that I was to put these things in the casket."

Section 5410 of the Revised Statutes of Missouri (1919) contains the following: "Provided, that in actions where one of the original parties to the contract or cause of action in issue or on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided, and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator."

The competency of Mrs. Kling to testify must be determined by this statute (28 U. S. Code § 631 [28 USCA § 631]). She was a plaintiff in the suit and sought to testify in her own favor and to establish her title to the stocks. Under this statute, as construed by the Supreme Court of Missouri, she was not competent to testify to the delivery of the key nor to narrate the conversation relating to it. Tomlinson v. Ellison, 104 Mo. 105, 16 S. W. 201; Dunn v. German-American Bank, 109 Mo. 90, 18 S. W. 1139; Meier v. Thieman, 90 Mo. 433, 2 S. W. 435.

■ Two keys to the safety deposit box were given to Mrs. Culver by the trust company. There was testimony by the executor and his attorney that the plaintiffs had said that their mother, a sister of Mrs. Culver, but who had died in June, 1924, held one of the keys. The plaintiffs denied making these statements. A few days after the death of Mrs. Culver, Mrs. Kling delivered to the executor one of the keys. The executor found the other key four or five months later, in looking through some of the papers and personal effects of Mrs. Culver. Over the objection of the defendants, Mrs. Kilpeck was allowed to testify that Mrs. Kling had told her in March, 1925, that her aunt had given her the key to the box. An objection was sustained to questions propounded to the husband of Mrs. Kling, and to an offer of proof by his testimony tending to show that Mrs. Kling had

told him, after she returned from visiting Mrs. Culver in March, 1925, that her aunt had given her a key to her box. The refusal of this testimony is assigned as error. It would be strange, if the fact of this gift could not be proved by the testimony of the donee, because of the bar of the Missouri statute which has been quoted, that the fact could be proved by the testimony of a third person, reciting that the donee had told the witness of the making of the gift.

The general rules against hearsay testimony and self-serving declarations exclude such testimony. The testimony offered was not a part of the res gestæ, as it was not contemporaneous with the alleged gift nor accompanying and characterizing it. Some courts allow declarations by a grantee or donee in possession, in aid of a presumption of ownership from possession, and as characterizing the nature of the possession. See 3 Wigmore on Evidence, § 1779. But the testimony was offered in this case in order to prove a fact alleged to have occurred before the conversations; that is, that Mrs. Culver had made the gift. In Hunnicutt v. Peyton, 102 U. S. 333, 364, 26 L. Ed. 113, the court says: "A declaration which is a mere recital of something past is not an exception to the rule that excludes hearsay evidence."

■ In Boston & Albany Railroad v. O'Reilly, 158 U. S. 334, 15 S. Ct. 830, 39 L. Ed. 1006, in an action to recover damages for negligence, the trial court had allowed a nurse and a physician to testify that the plaintiff had told them, some time after the accident, that a piece of nail had come out of his knee and the physician pointed out on the plaintiff's knee the scar of the hole out of which the plaintiff had told him the nail had come. The Supreme Court held that these matters were not part of the res gestæ, and were only hearsay. The testimony was undisputed that Mrs. Kling had possession of one of the keys soon after she came to visit Mrs. Culver in March, 1925, and retained it until shortly after Mrs. Culver's death, and the testimony given and offered could have no proper weight except as tending to prove that Mrs. Kling claimed a title of some kind by reason of the possession of the key. It was not admissible as proof that she had been given the key in the manner she narrated to the witnesses. There remains testimony by Mrs. Kling's husband that he saw the key in his wife's possession after her return from the visit to Mrs. Culver in March, 1925, of Mrs. Rohan, a neighbor of Mrs. Culver, who testified that Mrs. Culver told her in June, 1925, that she had given Mrs. Kling a key to the safe de-

posit box. This possession of the key by Mrs. Kling, and the fact that it had been given to her by Mrs. Culver, is a matter of ambiguity. These facts might indicate a symbolical delivery of the contents of the box (Harrison v. Foley [C. C. A.] 206 F. 57), or they might indicate a mere desire that the key should remain in trustworthy hands, while Mrs. Culver was ill and until she should ask for its return, or with the belief that it would be given to her executor, if she should die. The plaintiff did not claim, by pleading, nor in her brief, that the delivery of the key gave her the title to all the contents of the box. In order to show the intention of Mrs. Culver, the plaintiffs offered testimony of Mrs. Kilpeck that soon after the death of the plaintiff's mother (a sister of Mrs. Culver) in June, 1924, and before the last will of Mrs. Culver was executed, Mrs. Culver asked her if she thought it would be wise or good to give to the plaintiffs the stocks and things she had expected to give to their mother. She testified further: "She told me afterwards that she had given it to them '* * * I believe she told me afterwards. That I am not quite clear on. Well, she said she had given the stocks, or made arrangements, or something of that effect. I never quizzed her on anything at all."

Mrs. Hastedt, another friend of Mrs. Culver, testified that Mrs. Culver told her about April, 1925, that she thought the plaintiffs should receive the portion she had intended to will to their mother. Reliance is also placed upon the memorandum found attached to the will. It would be unprofitable to attempt to detail family relationships, the provisions of the previous wills of Mrs. Culver, and the many incidents that are relied upon by the parties to this appeal, as tending to prove or disprove a probable desire of Mrs. Culver to provide for the plaintiffs more generously than is expressed in her last will. The testimony has been carefully considered, and the conclusion is that it is not of the character which is required to show the intention of Mrs. Culver to give to the plaintiffs any of the corporate stocks contained in her safety deposit box. Even if the incompetent evidence, which has been referred to, is also considered, as if no objection had been made to it, the same conclusion must result. We are left without any safe guide as to what bequest she had intended to make to the plaintiff's mother. The bequests to this sister in her prior wills had varied widely. No other statement of what she had intended to give to her sister was proved. The memorandum attached to the will expresses the wish that the plaintiffs should have whatever stocks had not been given to any one by the will. After the making of specific bequests of portions of the stocks, the residuary clause, which has been quoted, bequeathed the rest of her estate to her seven nephews and nieces, share and share alike. In case of the death of any of these nephews or nieces, before the death of Mrs. Culver, the bequest was to belong to the descendants of the original beneficiary, or, in case there were no descendants, the legacy was to become a part of the residue of Mrs. Culver's estate.

The Supreme Court, in Wright v. Denn ex dem. Page, 10 Wheat. 204, 238, 6 L. Ed. 303, in referring to the terms of a portion of a will, used this language: "If, then it is asked, what interpretation the court put upon the words 'all the rest,' in connection with 'lands and tenements?' the answer is, that no definite meaning can, in this will, be annexed to them. It is our duty to give effect to all the words of a will, if, by the rules of law, it can be done. And where words occur in a will, their plain and ordinary sense is to be attached to them, unless the testator manifestly applies them in some other sense. But if words are used by him, which are insensible in the place where they occur, or their common meaning is deserted, and no other is furnished by the will, courts are driven to the necessity of deeming them as merely insignificant, or surplusage, and to find the true interpretation of the will without them. In the present case, the words, 'all the rest of my lands and tenements,' stand wholly disconnected with any preceding clause. There is nothing to which 'the rest' has relation, for no other devise of real estate is made. We have no certain guide to the testator's intention in using them. We may indulge conjectures; but the law does not decide upon conjectures, but upon plain, reasonable, and certain expressions of intention found on the face of the will."

■ In view of these provisions of the will of Mrs. Culver, it is impossible to give any effect to the memorandum attached to the will, because there were no stocks which had not been given to some one. The bequest to her seven nephews and nieces of the residue of her property was as specific and clear as the separate bequests of small amounts of her stock to named legatees. As it is impossible to determine with any reasonable degree of certainty what Mrs. Culver intended to give to the appellant and her brother, the delivery of the key, if it was delivered, to the appellant was not sufficient to pass the title to the stocks claimed.

342

The conclusion which has been reached makes it unnecessary to consider whether the other elements of a gift causa mortis have been proved, or whether the appellant's delay in asserting her claim has been such as to estop her from claiming the alleged gift as against the executor, in view of the changed position he occupies, since taking charge of the estate. The decree will be affirmed.